ROBERT S. McLAY (SBN 176661)
RSM@dkmlawgroup.com
JOSHUA N. KASTAN (SBN 284767)
JNK@dkmlawgroup.com
ANASTASIA M. LOLONG (SBN 298102)
AML@dkmlawgroup.com
ALEXANDRIA GASPER (SBN 309606)
AXG@dkmlawgroup.com
**DKM LAW GROUP, LLP**
535 Pacific Avenue, Suite 101
San Francisco, California 94133
Telephone: (415) 421-1100
Facsimile: (833) 790-5202

Attorneys for Defendant
USAA CASUALTY INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GINA ARMAS and DAVID ARMAS,<br><br>Plaintiffs,<br><br>vs.<br><br>USAA CASUALTY INSURANCE COMPANY; and DOES 1-100.<br><br>Defendant. | Case No. 5:17-cv-06909-EJD<br><br>**DEFENDANT USAA CASUALTY INSURANCE COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Date: May 9, 2019<br>Time: 9:00 a.m.<br>Crtrm: 4<br>Judge: Hon. Edward J. Davila |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

NOTICE IS HEREBY GIVEN that on May 9, 2019, 2019 at 9:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 4 of the United States District Court for the Northern District of California, San Jose Division, located at 280 South 1st Street, San Jose, California 95113, Defendant USAA Casualty Insurance Company ("USAA CIC") will and hereby does move the court for Summary Judgment or, in the alternative, Partial Summary Judgment pursuant to FRCP Rule 56, on the Complaint filed by Plaintiffs Gina and David Armas ("Plaintiffs").

**TABLE OF CONTENTS**


I. RELIEF REQUESTED AND SUMMARY OF MOTION .... 5
II. INTRODUCTION AND SUMMARY OF ARGUMENT .... 5
III. STATEMENT OF FACTS .... 6
A. The December 2012 Motor Vehicle Accident .... 6
B. Settlement With Third-Party Tortfeasor .... 6
C. Opinions of Eldan Eichbaum, M.D. as to Gina Armas .... 7
1. Record Review Report – February 16, 2016 .... 7
2. Supplemental Report No. 1 – April 28, 2016 .... 8
3. Supplemental Report No. 2 – November 5, 2016 .... 8
4. Supplemental Report No. 3 – December 27, 2016 .... 8
5. Independent Medical Examination – March 20, 2017 .... 8
6. Deposition of Dr. Eichbaum – April 28, 2017 .... 9
D. USAA CIC Pays the UIM Limits .... 9
E. USAA CIC Responds to Gina Armas' Alleged Wage Loss Claim .... 9
F. The July 26, 2014 Collision .... 10
IV. THE POLICY .... 10
A. The Policy's Medical Payments Coverage Covered Only the Reasonable Fee For Medically Necessary and Appropriate Medical Services .... 10
B. The Policy Allows the Parties to Arbitrate the Value of an UIM Claim .... 12
V. THE ARMASES CANNOT STATE A BREACH OF CONTRACT CLAIM BECAUSE USAA CIC APPROPRIATELY PERFORMED ALL OF ITS DUTIES AND OBLIGATIONS UNDER THE POLICY .... 13
A. There Was No Breach of Contract as to Either Gina or David Armas' Med-Pay Claims .... 14
B. There Can Be No Breach of Contract as to Gina Armas' UIM Claim When USAA CIC Paid the UIM Coverage Limits .... 18
C. There Can Be No Breach of Contract as to David Armas' UIM Claim When USAA CIC Complied With Its Obligation to Arbitrate the Value of His Claim .... 18
VI. THE ARMASES' BAD FAITH CLAIM FAILS .... 19
A. There Is No Attendant Breach of Contract .... 19
B. USAA CIC's Conduct in This Case Was Reasonable .... 20
1. USAA CIC Acted Reasonably in Providing Dr. Eichbaum All of Gina Armas' Medical Records .... 21
2. USAA CIC Acted Reasonably When It Promptly Changed Its Settlement Position Based on Dr. Eichbaum's Change in Opinion .... 22

3. USAA CIC Reasonably Investigated Gina Armas' Wage Loss Claim .......... 23
4. USAA CIC Acted Reasonably When It Declined Payment of Treatment Not Medically Reasonable or Necessary .......... 23
C. The Armases Cannot Point to Any Conduct Demonstrating Bad Faith .......... 24
D. Any Disagreement Among USAA CIC and Armas Is A "Genuine Dispute" .......... 24
VII. PLAINTIFFS' CLAIM FOR PUNITIVE DAMAGES FAILS .......... 26
A. There is No Evidence of Fraud, Oppression, or Malice .......... 26
B. No Clear and Convincing Evidence of Malice, Fraud or Oppression .......... 27
VIII. CONCLUSION .......... 29

## TABLE OFAUTHORITIES

### CASES

*Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1264 (1992) .... 13
*Basich v. Allstate*, 87 Cal.App.4th 1112, 1122 (2001) .... 27, 28
*California Shoppers v. Royal Globe*, 175 Cal. App. 3d 1, 55 (1985) .... 20
*Carlton v. St. Paul Mercury Ins. Co.*, 30 Cal.App. 4th 1450, 1454 (1994) .... 13
*CDF Firefighters v. Maldonado*, 158 Cal.App.4th 1226, 1239 (2008) .... 13
*Chateau Chamberay Homeowners Association v. Associated Inter'l Ins. Co.*, 90 Cal. App. 4th 335, 347 (2001) .... 24
*Comunale v. Traders & Gen. Ins. Co.*, 50 Cal. 2d 654, 658 (1958) .... 19
*Congleton v. National Union Fire Insurance Co.*, 189 Cal. App. 3d 51, 59 (1987) .... 20
*Fraley v. Allstate Ins. Co.*, 81 Cal. App. 4th 1282, 1292 (2000) .... 24
*Gruenberg v. Aetna Ins. Co.*, 9 Cal. 3d 566, 573 (1973) .... 19
*Hillenbrand, Inc. v. Ins. Co. of N. Am.*, 104 Cal.App.4th 784, 818 (2002) .... 26
*Jordan v. Allstate Ins. Co.*, 148 Cal.App.4th 1062, 1072 (2007) .... 24
*Love v. Fire Ins. Exchange*, 221 Cal.App.3d 1136, 1151 (1990) .... 18, 19
*Lunsford v. Am. Guar. & Liab. Ins. Co.*, 18 F.3d 653, 656 (9th Cir. 1994) .... 24
*Merritt v. Reserve Ins. Co.*, 34 Cal. App. 3d 858, 876 (1973) .... 20
*Minich v. Allstate Ins. Co.*, 193 Cal.App.4th 477, 493 (2011) .... 18
*Mock v. Michigan Millers Mut. Ins. Co.*, 4 Cal.App.4th 306, 328 (1992) .... 27
*Nager v. Allstate Ins. Co.*, 83 Cal.App.4th 284 (2000) .... 16
*Patrick v. Maryland Cas. Co.*, 217 Cal.App.3d 1566, 1575 (1990) .... 27
*Rappaport-Scott v. Inter-Insurance Exchange*, 146 Cal.App. 4th 831 (2007) .... 24
*Reader's Digest Ass'n v. Superior Court*, 37 Cal.3d 244, 252 (1984) .... 27
*Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1288 n.14 (1994) .... 26
*Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 18 (1995) .... 13, 18
*Waters v. United Services Auto. Assn.*, 41 Cal. App. 4th 1063, 1070 (1996) .... 19
*Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 721 (2007) .... 24, 25

## I. RELIEF REQUESTED AND SUMMARY OF MOTION

Defendant USAA Casualty Insurance Company ("USAA CIC") is entitled to summary judgment, or, in the alternative, partial summary judgment as to each of the two causes of action alleged by the Plaintiffs, Gina and David Armas ("Plaintiffs") against USAA CIC: (1) breach of contract and (2) breach of the implied covenant of good faith and fair dealing.

## II. INTRODUCTION AND SUMMARY OF ARGUMENT

This case arises from Plaintiffs Gina and David Armas' ("Plaintiffs" or "the Armases") claims that Defendant USAA Casualty Insurance Company ("USAA CIC") "delayed" its payment of underinsured motorist ("UIM") benefits due as a result of injuries suffered when their vehicle was rear-ended. Curiously, despite USAA CIC paying Gina Armas the full UIM policy limits of $300,000.00, and despite USAA CIC following the procedures required under the Policy in the event of a dispute over the value of their UIM claim, the Armases have brought a claim for breach of contract and breach of the implied covenant.

The undisputed facts show that as USAA CIC has paid the policy limits and has not withheld any benefits from Gina Armas there can be no breach of the insurance contract as to her UIM claim. Further, as USAA CIC has performed all of its duties and obligations under the insurance contract, there can also be no breach of contract. As any breach of contract claim for failure to pay under the Policy must fail, without the contract claim to support a tort of bad faith, the bad faith claim also fails.

<u>First</u>, Gina Armas has received the full UIM policy limits of $300,000 as provided for in the subject automobile policy, i.e., $15,000.00 from the underlying tortfeasor and $285,000.00 from USAA CIC. Therefore, where benefits are fully and promptly paid, there is no breach of contract. Similarly, as the parties agreed to arbitrate their disagreement over the value of Plaintiffs' UIM claims, there can also be no breach of the insurance contract when such procedure was followed pursuant to the requirements of the insurance contract.

<u>Second</u>, where there is no actual withholding of benefits and no breach of contract, no action lies for breach of the implied covenant.

<u>Third</u>, even if Plaintiffs' bad faith claim was considered, which it cannot, USAA CIC acted reasonably in its payment of the policy limits. For the year prior to the payment of the UIM limits,

USAA CIC's medical expert continuously opined that Gina Armas' injuries were not related to the subject accident. It was not until the medical expert's deposition, did he opine, **for the first time**, that Gina Armas' treatment was necessary and medically reasonable. Once USAA CIC learned of this new opinion, it promptly paid the UIM limits only 7 days later.

Fourth, any disagreement prior to the payment of both Plaintiffs' UIM claims can be characterized as a "genuine dispute" under California law. USAA CIC reasonably relied on the opinions and findings of its medical expert that opined for over a year that Gina Armas' injuries could not be attributed to the subject accident. Similarly, as to David Armas, the disagreement as to the value of his UIM claim is also a "genuine dispute."

Therefore, based on the reasonable conduct of USAA CIC, the genuine dispute doctrine and the additional arguments raised below, this Court can and should dispose of the breach of the implied covenant of good faith and fair dealing cause of action, even if it allows any aspect of the breach of contract claim to survive.

Fifth, there is absolutely no evidence to suggest that any of USAA CIC's conduct rose to the level of malice, fraud, or oppression warranting punitive damages. At a minimum, the Armases not only lack the basic elements of a punitive damages claim but also cannot even show they are entitled to punitive damages by the requisite clear and convincing standard. Accordingly, the Court must dismiss the Armases' punitive damages claim.

Based upon the undisputed facts and supporting evidence of this case, USAA CIC is entitled to summary judgment, or in the alternative, partial summary judgment.

## III. STATEMENT OF FACTS

### A. The December 2012 Motor Vehicle Accident

On the afternoon of December 27, 2012, in Merced, California, David and Gina Armas were stopped at a red light when their vehicle was rear-ended by Joseph Escamilla (hereinafter "the subject accident"). (Declaration of Mina Vidaurri ["Vidaurri Decl."] at ¶ 5.) Immediately after the accident, both David and Gina Armas complained of neck and back pain. (**Exhibit 1** to Vidaurri Decl.)

### B. Settlement With Third-Party Tortfeasor

On or about January 29, 2015, Armas advised USAA CIC of their settlement with the

underlying tortfeasor and the exhaustion of the underlying tortfeasor's bodily injury liability limits. (**Exhibit 2** to Vidaurri Decl.) The tortfeasor carried limits of $15,000.00 per person, $30,000.00 per accident. (*Id.*) Gina Armas received the maximum $15,000.00, David Armas received $10,000.00 and an undisclosed third person received the remaining $5,000.00. (*Id.*)

In the same letter, Armas advised of their resulting UIM claim and submitted a demand for arbitration pursuant to the terms of the subject automobile policy. (*Id.*)

### C. Opinions of Eldan Eichbaum, M.D. as to Gina Armas

USAA CIC retained Dr. Eldan Eichbaum as a medical expert in anticipation of arbitration. (Declaration of Gene Pierce ["Pierce Decl."] at ¶ 5.)

#### 1. Record Review Report – February 16, 2016

On February 16, 2016, Dr. Eichbaum prepared a report pertaining to his review of Gina Armas' non-medical records, such as Armas' discovery responses; her medical records prior to the subject accident; medical records related to the subject accident; MRI scans and billing records. (**Exhibit 8** to Pierce Decl.)

Significantly, Dr. Eichbaum made the following findings related to Gina Armas' alleged neck and back pain:

- "[H]er imaging studies have been read out as being **relatively normal**." (*Id.*)
- "[T]his disc protrusion that is present at C6-7 **is not significant and not causing significant nerve root compression**, and may very well have been there **prior to the motor vehicle accident**." (*Id.*)
- "She most likely had **pre-existing cervical spondylosis and disc degeneration** …". (*Id.*)
- "**I do not believe that any further treatment is necessary for her cervical spine due to the 2012 motor vehicle accident.**" (*Id.*)
- "Surgery **is not indicated at this time, nor would be indicated due to the motor vehicle accident.**" (*Id.*)
- "As far as the low back is concerned, … **again consistent with a chronic degenerative process and not due to the accident itself.**" (*Id.*)
- "[T]he majority of her low back pain has also **resolved** …". (*Id.*)

Per the opinions stated in Dr. Eichbaum's medical report, USAA CIC found that Gina Armas' surgeries could not be placed on the subject accident and could be attributed to her pre-existing disc degeneration and the multiple other accidents she was involved in both prior to and after the subject

accident.

**2. Supplemental Report No. 1 – April 28, 2016**

Dr. Eichbaum prepared a first Supplemental Report in April 2016 wherein he reviewed additional diagnostic studies pertaining to Gina Armas. (**Exhibit 9** to Pierce Decl.) The report stated that Dr. Eichbaum's "assessment and recommendations **are unchanged from the 02/16/2016 report.**" (*Id.*)

**3. Supplemental Report No. 2 – November 5, 2016**

In his second Supplemental Report, Dr. Eichbaum reviewed Gina Armas' deposition transcript, additional medical records prior to the subject accident, additional medical records after the subject accident and additional diagnostic studies including an MRI scan and x-rays of the cervical spine. (**Exhibit 10** to Pierce Decl.) Dr. Eichbaum's review also included medical records from Gina Armas' treatment with Stanford Healthcare. (*Id.*)

Dr. Eichbaum opined: "[a]fter reviewing these additional records, **my opinion remains the same.**" (*Id.*) He further reinforced his prior opinions, "I did not believe that she was an ideal surgical candidate. …[s]he had pre-existing disc degeneration …, which were likely contributing to her longstanding neck pain" (*Id.*) Finally, he repeated his prior opinion that Gina Armas' complaints could not be the result of the subject accident:

- "The fact that she underwent surgery **cannot be placed on the subject motor vehicle accident**, but more so due to her baseline **cervical spondylosis and disc degeneration**, the **natural aging process** of the cervical spine, as well as her **multiple other motor vehicle accidents**." (*Id.*)

**4. Supplemental Report No. 3 – December 27, 2016**

Dr. Eichbaum stated in his fourth Supplemental Report that after his review of the additional medical records submitted, including additional medical records from Stanford Healthcare, that his opinion ***still had not changed*** from his prior Record Review and three prior supplemental reports. (**Exhibit 11** to Pierce Decl.)

**5. Independent Medical Examination – March 20, 2017**

Dr. Eichbaum conducted an Independent Medical Examination of Gina Armas on March 20, 2017. Even after evaluating Armas in person, Dr. Eichbaum concluded that his "prior opinions **are**

**<u>unchanged by this new information</u>**." (**Exhibit 12** to Pierce Decl.) He then reproduced the assessment and findings reached in his initial record review of February 2016 into his Independent Medical Examination Report. (*Id*.)

### 6. <u>Deposition of Dr. Eichbaum – April 28, 2017</u>

Dr. Eichbaum was deposed on April 28 2017. (*See* **Exhibit 16** to Declaration of Anastasia M. Lolong ["Lolong Decl."], Deposition of Eldan Eichbaum, MD ["Eichbaum Deposition"].) For the first time, and despite previously opining in his five previous written reports that Gina Armas' alleged injuries were ***not*** connected to the subject accident, Dr. Eichbaum opines that all of Gina Armas' treatment was reasonable and medically necessary. (**Exhibit 16** to Lolong Decl., Eichbaum Deposition at 12:25-13:1; 14:1-21.) None of Dr. Eichbaum's five prior reports had included such an opinion. (*See* **Exhibits 8-12** to Pierce Decl. and Pierce Decl. at ¶ 11.)

## D. <u>USAA CIC Pays the UIM Limits</u>

On May 1, 2017, David Armas' UIM claim was settled in the amount of $60,000.00. (Pierce Decl. at ¶ 12.) Once USAA CIC received Dr. Eichbaum's new medical opinion on April 28, 2018, it promptly considered it and changed its position relative to the underlying claim. (Pierce Decl. at ¶ 13.) Only 7 days after Gina Armas demanded the UIM policy limits, USAA CIC settled Gina Armas' UIM claim for $285,000.00 ($300,000.00 less tortfeasor's $15,000.00 bodily injury limits) on May 8, 2017. (*Id*.)

## E. <u>USAA CIC Responds to Gina Armas' Alleged Wage Loss Claim</u>

On August 23, 2017, USAA CIC responded to correspondence from the Armases alleging USAA CIC had failed to improperly investigate and respond to Gina Armas' wage loss claim. (**Exhibit 14** to Pierce Decl.) However, the wage earner disability application Gina Armas submitted failed to connect her disability and inability to work to the December 2012 accident as was required under the terms of the extended benefits coverage under the Policy. (*See* **Exhibit 20** to Lolong Decl. and The Policy at ARMAS_CP_019.). Accordingly, as Gina Armas had failed to meet the requirements in order to receive wage earner benefits, counsel's claim that "USAA made no effort to investigate or otherwise determine the validity of the wage loss claim" had no merit.

**F. <u>The July 26, 2014 Collision</u>**

On July 26, 2014, Plaintiffs were involved in another motor vehicle collision where they were again rear-ended while stopped at a red light. (Declaration of Carlos Mendez, ["Mendez Decl."] at ¶ 6.) According to the Complaint, Plaintiffs are currently litigating the claim against the at-fault driver. (Complaint at ¶ 20.) Based on the pleadings, it appears Plaintiffs' claims arise out of only the December 2012 collision. However, in an abundance of caution and to the extent Plaintiffs claim certain Med-Pay benefits arising out of the July 2014 collision are allegedly due, USAA CIC has addressed the validity of those claims below.

## IV. THE POLICY

USAA CIC issued policy number 00569 83 58C 7101 8 to Gina Dawn Graham-Armas with effective dates from November 2, 2012 to January 5, 2013 ("the Policy"). (**Exhibit 19** to Lolong Decl. ["The Policy"].)

**A. <u>The Policy's Medical Payments Coverage Covered Only the Reasonable Fee For Medically Necessary and Appropriate Medical Services</u>**

USAA CIC's policy contains a Medical Payments ("Med-Pay") provision which pays for medical treatment ***subject to certain terms and conditions***. The Policy's Med-Pay Coverage states, in pertinent part:

> INSURING AGREEMENT
>
> A. Medical Payments Coverage.
>
> 1. We will pay only the reasonable fee for medically necessary and appropriate medical services and the reasonable expense for funeral services. These fees and expenses must:
>
>    a. Result from BI sustained by a covered person in an auto accident; and
>
>    b. Be incurred for services rendered within one year of the date of the auto accident.
>
> 2. We or someone on our behalf will review, by audit or otherwise, claims for benefits under this coverage to determine if the charges are reasonable fees for medically necessary and appropriate services or reasonable expenses for

> funeral services. …

(The Policy at ARMAS_CP_034-035.)

Accordingly, there is coverage for the payment of medical treatment – assuming the incurred cost is for "medically necessary and appropriate medical services" and is accident related. The phrase "medically necessary and appropriate services" is defined within the Policy and is tethered to objective criteria. The Policy includes defined terms which include the following:

> PART B – MEDICAL PAYMENTS COVERAGE
> DEFINITIONS
>
> * * *
>
> F. Medically necessary and appropriate medical services are those services or supplies provided or prescribed by a licensed hospital, licensed physician, or other licensed medical provider that, as determined by us or someone on our behalf, are required to identify or treat BI caused by an auto accident and sustained by a covered person and that are:
>
> 1. Consistent with the symptoms, diagnosis, and treatment of the covered person's injury and appropriately documented in the covered person's medical records;
>
> 2. Provided in accordance with recognized standards of care for the covered person's injury at the time the charge is incurred;
>
> 3. Consistent with published practice guideline and technology, and assessment standards of national organizations or multi-disciplinary medical groups;
>
> 4. Not primarily for the convenience of the covered person, his or her physician, hospital, or other health care provider;
>
> 5. The most appropriate supply or level of service that can be safely provided to the covered person; and
>
> 6. Not excessive in terms of scope, duration, or intensity of care needed to provide safe, adequate, and appropriate diagnosis and treatment.

> * * *

(The Policy at ARMAS_CP_018.)

> G. Reasonable fee is the amount which we will pay for charges made by a licensed hospital, licensed physician, or other licensed medical provider for medically necessary and appropriate medical services. We will pay the lesser of:
>
> 1. The actual charge;
>
> 2. The charge negotiated with a provider; or
>
> 3. The charge determined by a statistically valid database that is designed to reflect charges for the same or comparable services or supplies in the same or similar geographic region. The database will also reflect, where applicable, (a) the value of the actual medical services based on a nonspecialty specific relative value scale for the services relative to other services and, (b) in the case of new procedures, services, or supplies, a comparison to commonly-used procedures, services, or supplies.
>
> * * *

(The Policy at ARMAS_CP_034.)

**B. <u>The Policy Allows the Parties to Arbitrate the Value of an UIM Claim</u>**

The uninsured motorist coverage of the Policy also provides a mandatory arbitration provision in the event the insurer and the insured disagree as to the value of the insured's UIM claim. The Policy provides, in pertinent part:

> PART C – UNINSURED MOTORISTS BODILY INJURY COVERAGE and UNINSURED MOTORISTS PROPERTY DAMAGE COVERAGE
>
> * * *
>
> ARBITRATION
>
> A. This section applies to UMBI Coverage and UMPD Coverage and UMPD WOCD Coverage. If we and a covered person disagree as to:
>
> 1. Whether a covered person is legally entitled to

> recover BI or PD damages from the owner or operator of an uninsured motor vehicle or an underinsured motor vehicle; or
>
> 2. The amount of BI and PD damages that the covered person is legally entitled to collect from that owner;
>
> then, that disagreement shall be arbitrated upon request of either party. This arbitration shall be limited to the two aforementioned factual issues and shall not address any other issues, including but not limited to, coverage questions. Any arbitration finding that goes beyond the two aforementioned factual issues shall be voidable by us or a covered person.

(The Policy at ARMAS_CP_037.)

## V. THE ARMASES CANNOT STATE A BREACH OF CONTRACT CLAIM BECAUSE USAA CIC APPROPRIATELY PERFORMED ALL OF ITS DUTIES AND OBLIGATIONS UNDER THE POLICY

Defendant USAA CIC did not breach the insurance contract since its performance matched its obligations pursuant to the terms of the Policy. Due to USAA CIC's compliance with its contractual obligations, there is no breach of contract.

Under California law, interpretation of an insurance policy is a question of law. (*Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 18 (1995).) While insurance contracts may have special attributes, they are nevertheless contracts to which the ordinary rules of contract interpretation apply. (*Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1264 (1992).)

It is axiomatic that a cause of action for breach of contract fails where no contractual obligation existed or was breached. (*See e.g.*, *Carlton v. St. Paul Mercury Ins. Co.*, 30 Cal.App. 4th 1450, 1454 (1994).) A claim for breach of contract requires "1) existence of the contract; 2) plaintiff's performance or excuse of nonperformance; 3) defendant's breach; and 4) damages to plaintiff as a result of the breach." (*CDF Firefighters v. Maldonado*, 158 Cal.App.4th 1226, 1239 (2008).)

USAA CIC did not breach the insurance contract when it followed the procedures and obligations required under the Policy in relation to both Gina and David Armas' UIM and Med-Pay claims.

### A. There Was No Breach of Contract as to Either Gina or David Armas' Med-Pay Claims[1]

The applicable policy language specifically identifies what is covered and how medical bills will be considered. The Policy provides Med-Pay coverage only for "medically necessary and appropriate medical services." (The Policy at ARMAS_CP_018, 34-35.) "Medically necessary and appropriate medical services" is not an ambiguous term as it is specifically defined within the Policy. (The Policy at ARMAS_CP_018.)

The meaning of "medically necessary and appropriate medical services," and how the methodology is implemented is set forth within the policy contract. USAA CIC advised Plaintiffs of the Policy's procedure of reviewing medical bills pursuant to a Med-Pay claim. (**Exhibit 3** to Vidaurri Decl.) To determine whether a bill is covered pursuant to the terms of the relevant Med-Pay provision, the bill will be (as was done here):

- "Determined by … someone on [USAA CIC's] behalf;"
- "Consistent with the symptoms [and] diagnosis … and appropriately documented in the covered person's medical records;"
- "Consistent with published practice guidelines … and assessment standards of national organizations or multi-disciplinary medical groups," and,
- "not excessive in terms of scope [or] duration … of care." (The Policy at ARMAS_CP_018.)

Accordingly, USAA CIC had a genuine and reasonable basis for the declination to pay for certain medical treatment related to alleged injuries sustained in both the December 2012 collision <u>and</u> the July 2014 collision.[2] Such basis for declining those payments was based on information provided to it by licensed medical practitioners. Thus, at a minimum, even if Plaintiffs intend to argue there is a breach of contract, which there is not, there cannot be any bad faith because of the genuine dispute.

---

[1] Although it is unclear from the Complaint whether Plaintiffs are alleging that Gina Armas was unreasonably denied Med-Pay benefits related to the July 2014 collision, in an abundance of caution, USAA CIC respectfully requests the court to address the alleged Med-Pay benefits owed to Gina Armas as they relate to the July 2014 collision.

[2] Med-Pay benefits for the July 2014 collision were subject to the same requirement of "medically necessary and appropriate medical services."

As allowed by the terms of the insurance contract, USAA CIC had the Plaintiffs' medical records and invoices submitted in both collisions reviewed by an independent third party, Auto Injury Solutions ("AIS"). (Vidaurri Decl. ¶¶ 10-12; Mendez Decl. ¶¶ 7-9 and The Policy at ARMAS_CP_018.) AIS retained independent consultants to provide expert opinions about Plaintiffs' medical records. (Vidaurri Decl. ¶¶ 10-12 and Mendez Decl. ¶¶ 7-9.)

Through this process, USAA CIC considered and paid David Armas' medical bills under the Policy's Med-Pay coverage in the amount of $3,428.00 and paid Gina Armas' medical bills in the amount of $2,630.73 as to the 2012 accident. (Vidaurri Decl. at ¶ 9.)

As to the July 2014 accident, USAA CIC considered and paid David Armas' medical bills under the Policy's Med-Pay coverage in the amount of $4,916.83 and paid Gina Armas' medical bills in the amount of $3,463.75. (Mendez Decl. at ¶ 6.)

Here, all of the Plaintiffs' medical treatment invoices were appropriately analyzed and handled in accordance with the terms of the Med-Pay provision contained within the Policy (Vidaurri Decl. ¶¶ 10-12 and Mendez Decl. ¶¶ 7-9).

- <u>As to David Armas (2012 collision)</u>:

| Reviewing Medical Expert | Type of Service | Bases for Declination |
|---|---|---|
| Mark Albright, D.C. | Chiropractic | Not medically reasonable or necessary due to their "inappropriate" use in "rehabilitation beyond the phase of early soft tissue healing" as well as "scientific literature strongly suggest[ing] that passive modalities lose their effectiveness after 3 to 4 weeks." (**Exhibit 4** to Vidaurri Decl.) |
| Mark Albright, D.C. | MRI | MRI not medically reasonable or necessary as the MRI revealed "otherwise insignificant tears or bulges… that would have been treated the same regardless of the study or not. …care should have been rendered with the working diagnosis without the use of MRI." (**Exhibit 5** to Vidaurri Decl.) |

- <u>As to Gina Armas (2012 collision)</u>:

| Reviewing Medical Expert | Type of Service | Bases for Declination |
|---|---|---|
| David Chen, M.D. | Injection of subacromial bursa | Not medically reasonable or necessary as treatment for the shoulder raised issues of causality based on the absence of shoulder complains prior to recent medical evaluations. (**Exhibit 6** to Vidaurri Decl.) |

| | | |
|---|---|---|
| George Sage, D.C. | MRI | Not medically necessary as there was no established documentation or substantive discussion prior to the MRI that demonstrated "how these MRI scans were medically necessary for clinical decision-making within the scope of chiropractic treatment." (**Exhibit 7** to Vidaurri Decl.) |

- <u>As to Gina Armas (2014 collision)</u>:

| Reviewing Medical Expert | Type of Service | Bases for Declination |
|---|---|---|
| Timothy Chen, M.D. | Physical Therapy | Patient exceeded the guideline recommended duration of treatment. When exceeding the recommended guideline, exceptional factors should be noted to support continuing physicial therapy. No exceptional factors presented. (**Exhibit 21** to Mendez Decl.) |
| David Boguslavsky, M.D. | Physical Therapy | Appeal of prior review of need for physical therapy. Lack of substantial progress was documented and appeal failed to provide any additional clinical information to suggest previous determination should be overturned. (**Exhibit 22** to Mendez Decl.) |
| Timothy Chen, M.D. | Physical Therapy | Patient undergone 6.5 months of physical therapy, exceeding guideline for recommended duration of treatment. In the absence of new tests or treatments, the visit does not serve any medical purpose. (**Exhibit 23** to Mendez Decl.) |
| Timothy Chen, M.D. and David Boguslavsky, M.D. | Physical Therapy | Between February 2015 and June 2015, Drs. Chen and Boguslavsky continued to opine that in light of the fact that Armas had exceeded the recommended duration of treatment, no substantial objective progress was documented and no additional clinical information was presented to suggest these determinations should be overturned, Armas' physical therapy sessions were not medically reasonable or appropriate as such treatment failed to bring about a successful resolution of Armas' symptoms. (**Exhibits 24-30** to Mendez Decl.) |

USAA CIC handled the claim in accordance with the terms of the Policy and paid what was covered. There is no breach of the insurance contract.

*Nager v. Allstate Ins. Co.*, 83 Cal.App.4th 284 (2000), is illustrative of the issues presented in this case, and foretells the proper result. In *Nager*, an insured was injured in an automobile accident case and submitted various chiropractic bills to his insurer (Allstate) under his Med-Pay coverage. Allstate paid some, but not all, of the medical bills. Allstate determined, with the assistance of a

computerized billing program that several services should not be compensated since they exceeded "frequency guidelines." The insured's insurance consultant opined that Allstate was in bad faith for not having "an independent medical (or in this case chiropractic) review of the bills and records." (*Id*. at 287 [parenthesis in original].) Allstate moved for summary judgment which the trial court granted. The insured appealed, but the Court of Appeal affirmed.

In affirming the trial court's granting of summary judgment, the Court of Appeal first observed the applicable, and controlling, policy language which is essentially identical to USAA CIC's policy language:

> "Allstate's policy. . .imposed a further requirement that such medical expenses be both 'reasonable' and 'necessary.' 'Unreasonable' med-pay expenses were defined as an 'excessive number, amount or duration' of medical services." (*Id*. at 290.)

The Court of Appeal then further observed the appropriateness of the policy language by noting:

> "Given this policy structure, there are compelling public policy reasons why insurers should not provide medical lien holders with a blank check for automatic payment of all outstanding bills. Personal injury litigation places a central focus upon medical specials, litigation-oriented medical reports, and depositions and testimony by treating physicians and medical experts. Simple economics preclude such costs from being incurred on a pay-as-you-go basis." (*Id*.)

Finally, the Court of Appeal approved of Allstate's handling of the claim and explained:

> "Allstate did not stonewall [the insured's] med-pay claim or take the position that soft tissue injuries or chiropractic treatments were not covered. To the contrary, **Allstate promptly paid [the insured's] first bill and only questioned subsequent billings when the treatment charges appeared to exceed both his original plan and the amount it determined was customary and reasonable for [the insured's] diagnosis.** Allstate indicated its willingness to continue its investigation and reevaluate the payments upon further information from the medical providers." (*Id*. at 291 [emphasis added.)

Here, USAA CIC paid for the medical services it believed were "medically necessary and appropriate medical services." USAA CIC did not simply rely on a computer database but had the Plaintiffs' chiropractic and MRI bills and records reviewed by an independent medical doctor and chiropractic doctor who each prepared a report, outlined the opinions, and cited to published and authoritative sources to support their opinions. Thereafter, the reports were provided to the Plaintiffs,

and USAA CIC advised the Plaintiffs that the decision could be appealed. At all times, USAA CIC acted reasonably and in compliance with both its policy obligations and the implied covenant.

**B. <u>There Can Be No Breach of Contract as to Gina Armas' UIM Claim When USAA CIC Paid the UIM Coverage Limits</u>**

As to Gina Armas, there was no breach of the insurance contract as to her UIM claim because USAA CIC fully performed under the Policy by paying her the UIM policy limits.

In the instant case, upon receiving a new opinion from medical expert Dr. Eichbaum that Gina Armas' medical treatment was reasonable and necessary, USAA CIC promptly paid Gina Armas $285,000.00. (Pierce Decl. at ¶ 13.) Therefore, Gina Armas received the full UIM policy limits of $300,000, i.e., $15,000.00 from the tortfeasor's insurance carrier, and $285,000.00 from USAA CIC.

Accordingly, as USAA CIC fully performed under the insurance contract by paying Gina Armas the full UIM policy limits, there can be no breach of the insurance contract as to this aspect of the claim.

**C. <u>There Can Be No Breach of Contract as to David Armas' UIM Claim When USAA CIC Arbitrated the Value of His Claim</u>**

The instant case is one where two parties disagreed as to the value of David Armas' UIM claim. Both parties also had a reasonable and supportable basis for their positions. The subject insurance contract, contemplating the potential for dispute regarding causation and damages in the UIM context, included a provision for the resolution of such a disagreement. As set out above, the UIM coverage of the Policy includes an arbitration clause which is triggered by a disagreement regarding the amount of damages an insured is entitled to recover.

Here, pursuant to the Armases' request for arbitration, the parties entered into arbitration proceedings as required under the terms of the Policy. The fact that USAA CIC accepted coverage of the UIM claim but disagreed as to its value is ***not*** a breach of contract under the express terms of the Policy. Indeed, David Armas' UIM claim went to arbitration as was required under the terms of the Policy and settlement was reached as to **<u>both</u>** David and Gina's UIM claims.

Therefore, there can be no breach of the insurance contract when there was a valid disagreement as to the value of David's UIM claim; the contract required arbitration in the event of a disagreement over the value of a UIM claim; the parties agreed to arbitration; a settlement was

reached and David was paid UIM benefits in the amount of $60,000.00. (Pierce Decl. at ¶¶ 3, 12.)

The procedures and obligations under the contract were followed and fulfilled. The parties agreed to arbitrate and settlement was reached, thus, there is no basis to impose any breach of contract liability against USAA CIC as to David Armas' UIM claim and he cannot point to any provision of the Policy's UIM coverage that has been breached.

USAA CIC's investigation of Plaintiffs' UIM and Med-Pay claims are consistent with the terms of the Policy. As to the Med-Pay claims – USAA CIC was entitled to determine the medical reasonableness and necessity of Plaintiffs' treatment and – as to the UIM claims – USAA CIC was entitled to determine the amount of damages Plaintiffs were legally entitled to recover from the uninsured driver.

Accordingly, there being no "breach" of any of the provisions of the insurance contract by USAA CIC in resolving the parties' disagreement over UIM and Med-Pay benefits, this Court should grant USAA CIC's Motion for Summary Judgment as to the Armases' flawed breach of contract claim.

## VI. THE ARMASES' BAD FAITH CLAIM FAILS

### A. There Is No Attendant Breach of Contract

It is undisputed that under California law, a claim for bad faith cannot lie where benefits due under the policy have not been withheld. (*See Love v. Fire Ins. Exchange*, 221 Cal.App.3d 1136, 1151 (1990); *Waller v. Truck Ins. Exchange*, 11 Cal.4th 1, 36 (1995).) If the insurer did not breach the policy, it did not breach the implied covenant. (*See Minich v. Allstate Ins. Co.*, 193 Cal.App.4th 477, 493 (2011).)

Moreover, "[w]here benefits are *fully and promptly paid*, no action lies for breach of the implied covenant – no matter how hostile or egregious the insurer's conduct toward the insured may have been prior to such payment. *I.e., absent actual withholding of benefits due, there is no breach of contract and likewise no breach of the insurer's implied covenant*. (*Love v. Fire Ins. Exchange, supra*, 221 Cal.App.3d at 1151, fn. 10 [emphasis in original].)

In the instant case, as Gina Armas has ***received the full UIM policy limits*** as provided for in the subject policy, there can be no breach of contract. Moreover, as to David Armas, as all procedures

and obligations required under the Policy's UIM and Med-Pay coverage were followed, the bad faith claim fails as a matter of law.

Finally, as USAA CIC also had a genuine and reasonable basis for the declination of payment of certain medical treatment pursuant to the terms of the Policy's Med-Pay coverage, there can also be no breach of contract. Accordingly, as there has been no withholding of benefits there can also be no bad faith.

**B. <u>USAA CIC's Conduct in This Case Was Reasonable</u>**

Even if the court were to find a breach of contract, which it cannot, the undisputed facts show that USAA CIC conducted a prompt, reasonable, and fair investigation. USAA CIC relied upon an appropriate expert to opine on the extent of the claimed injuries and promptly paid once the opinions indicated the value of the UIM claims. These undisputed facts alone demonstrate that USAA CIC did not unreasonably withhold policy benefits or unreasonably delay the payment of policy benefits.

The fundamental principal of the implied covenant is "that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." (*Gruenberg v. Aetna Ins. Co.*, 9 Cal. 3d 566, 573 (1973); *Comunale v. Traders & Gen. Ins. Co.*, 50 Cal. 2d 654, 658 (1958).) The implied covenant of good faith and fair dealing obligates the insurer to not unreasonably withhold benefits or refuse what is due under the contract without proper cause. (*Waters v. United Services Auto. Assn.*, 41 Cal. App. 4th 1063, 1070 (1996).) Stated another way, "unreasonableness" is where an insurer takes a position that is "inherently unreasonable." (*Congleton v. National Union Fire Insurance Co.*, 189 Cal. App. 3d 51, 59 (1987).) The implied covenant of good faith and fair dealing requires an insurer to be reasonable, but not flawless. (*California Shoppers v. Royal Globe*, 175 Cal. App. 3d 1, 55 (1985) [mistakes by insurer in claim handling do not constitute bad faith; the proper standard is "unfair dealing"]; *Congleton v. National Union Fire Ins. Co.*, 189 Cal. App. 3d 51, 59 (1987).) "Bad faith implies dishonesty, fraud and concealment." (*Merritt v. Reserve Ins. Co.*, 34 Cal. App. 3d 858, 876 (1973).)

Despite USAA CIC's reasonable conduct in handling the Armases' claims, USAA CIC anticipates Plaintiffs will make several claims that purport to evidence USAA CIC's alleged bad faith. As discussed in further detail below, the undisputed facts of this case will clearly show that each of

Plaintiffs' contentions have no merit and are easily dismissed.

**1. <u>USAA CIC Acted Reasonably in Providing Dr. Eichbaum *All* of Gina Armas' Medical Records</u>**

USAA CIC anticipates Plaintiffs will claim that USAA CIC failed to provide Dr. Eichbaum with all of Gina Armas' medical records, specifically, records pertaining to her treatment at Stanford Healthcare. Plaintiffs will likely claim that as a result of USAA CIC's alleged withholding of the Stanford medical records, (1) Dr. Eichbaum's opinions were not valid until he was first presented with the Stanford medical records at his deposition when he changed his opinions and (2) Dr. Eichbaum's opinions changed at his deposition based on the introduction of the previously withheld medical records.

This contention is wholly unsupported by the evidence. A simple review of Dr. Eichbaum's written reports will show he was provided with the Stanford medical records and his opinions were based on his receipt and review of the Stanford medical records.

Dr. Eichbaum's Supplemental Report 2, dated November 5, 2016, states that Dr. Eichbaum reviewed 15 different records from Stanford Healthcare ranging from February 2016 through June 2016. (**Exhibit 10** to Pierce Decl.) Dr. Eichbaum concludes in Supplemental Report 2: "After reviewing these additional records, ***my opinion remains the same***." (*Id.*)

On December 14, 2016, counsel for USAA CIC, Michael G. Jones, sent Dr. Eichbaum a letter enclosing additional medical records and films pertaining to Gina Armas' treatment at Stanford Hospital & Clinics. (*See* **Exhibit 13** to Pierce Decl.)

Dr. Eichbaum's Supplemental Report 3, dated December 27, 2016, states his review of the materials provided to him by Mr. Jones. (**Exhibit 11** to Pierce Decl.) He concluded: "[a]fter review of these records, my assessment and opinions remain unchanged from my previous Record Review Report of 02/16/2016, and first and second supplemental reports of 04/28/2016 and 11/05/2016, respectively." (*Id.*)

Therefore, it is undisputed that USAA CIC did not withhold any of the subpoenaed Stanford medical records from its defense expert, Dr. Eichbaum.

Furthermore, Dr. Eichbaum's opinion had changed <u>not</u> based on his being presented with the

Stanford medical records for the first time at his deposition – which he was not – but was based on Gina Armas' alleged persistent symptoms over the years despite nonoperative treatment.

Dr. Eichbaum testified at his deposition that his opinion changed because:

> "Q. Now, in some of your reports, I noted that you opine that surgery was not necessary, but today you testified that it was. So in your review of the whole case, you've changed your opinion?
>
> . . .
>
> A. After reviewing her situation for the years that she's had her symptoms, I don't think it's unreasonable to attempt surgery, as she has undergone nonoperative modalities. I would agree, in the first two or three years I would not have offered her surgery, as a surgeon. …
> **<u>But if someone had undergone treatment for four years, as she had, and had not improved, and she really only had a single-level mild abnormality, it's not unreasonable to proceed with surgery in that situation.</u>**"

(**Exhibit 16** to Lolong Decl., Eichbaum Deposition at 22:13-23:16.)

Accordingly, Dr. Eichbaum's change in opinion was based on his opinion that as Gina Armas had not found relief through nonoperative medical treatment, surgery was not unreasonable – <u>not</u> on any withholding of medical records by USAA CIC and certainly not based on his failure to review the Stanford medical records which he clearly had reviewed.

**2. <u>USAA CIC Acted Reasonably When It Promptly Changed Its Settlement Position Based on Dr. Eichbaum's Change in Opinion</u>**

The Armases may also claim that USAA CIC was motivated to settle their UIM claims due to adverse rulings by the arbitrator in the underlying arbitration. This is simply unsupported by the facts and timeline of settlement. As discussed at length below, USAA CIC reasonably relied on the medical opinions of Dr. Eichbaum in evaluating the value of Gina Armas' UIM claim. All **<u>five</u>** of the reports authored by Dr. Eichbaum stated that his opinions remained ***unchanged*** from his initial report where he opined that her symptoms were due to a ***previous*** motor vehicle accident, her symptoms were exacerbated by an accident ***after*** the subject collision and that surgery was ***not indicated***, ***nor would be indicated due to the subject accident.*** It was not until Dr. Eichbaum's deposition in April 2017 did he first opine as to the reasonableness of Gina Armas' treatment. Based on Dr. Eichbaum's

change in opinion, USAA CIC promptly paid the policy limits one week after his deposition. Here, USAA CIC acted in an extremely short period of time upon learning new information – and not based on the outcome of the arbitration motions in limine.

**3. USAA CIC Reasonably Investigated Gina Armas' Wage Loss Claim**

On August 7, 2017, Plaintiffs sent USAA CIC a letter regarding its alleged failure to issue wage loss claim forms as requested and its alleged failure to reasonably investigate Gina Armas' wage loss claim.

These claims are easily rejected for reasons that are two-fold: (1) USAA CIC provided Gina Armas with the wage loss forms on July 19, 2016 (**Exhibit 15** to Pierce Decl.); (2) although Gina Armas submitted an application for wage earner disability benefits related to the December 2012 MVA, the disability documents from her medical providers failed to connect her disability and inability to work with the December 2012 MVA ***as required under the terms of the extended benefits coverage*** (*See* **Exhibit 20** to Lolong Decl. and The Policy at ARMAS_CP_019.).

It is undisputed that the documents Gina Armas submitted in support of her wage loss claim failed to demonstrate a causal link between her disability and inability to work to the 2012 accident. (**Exhibit 20** to Lolong Decl.)

Accordingly, as the application submitted did not connect Gina Armas' disability to the 2012 accident, USAA CIC cannot be alleged to have wrongfully denied her claim. She simply failed to meet the requirements to receive wage earner disability benefits under the express terms of the Policy. Therefore, Plaintiffs' claim that USAA CIC failed to properly review her wage earner claim has no merit.

**4. USAA CIC Acted Reasonably When It Declined Payment of Treatment Not Medically Reasonable or Necessary**

Finally, and as discussed above, USAA CIC did not breach the subject insurance contract or act in bad faith when it declined to pay for certain medical treatment. The subject Policy contains a Med-Pay provision which expressly states Med-Pay benefits are subject to certain terms and conditions – most importantly, that benefits will only be paid for the reasonable fee for medically necessary and appropriate medical services.

As allowed by the terms of contract, the Armases' medical treatment was reviewed by an independent third party medical expert. Here, all of the Plaintiffs' medical treatment invoices were appropriately analyzed and handled in accordance with the terms of the Med-Pay provision contained within the Policy. USAA CIC paid what was covered. There is no breach of the insurance contract or bad faith.

### C. The Armases Cannot Point to Any Conduct Demonstrating Bad Faith

When both Plaintiffs were asked if they felt USAA CIC had lied to them or misled them in bad faith, neither David or Gina Armas could identify any such instance. (*See* **Exhibits 17 and 18** to Lolong Decl.)

When David Armas was asked whether he believed USAA CIC advised him of anything that was untrue, his only complaint was that USAA CIC representatives advised they were unable to speak with him because he was represented by counsel. (**Exhibit 18** to Lolong Decl., Deposition of David Armas at 56:22-57:12.) In addition, David Armas also testified he is still insured by USAA CIC, despite his initiation of the instant litigation. (**Exhibit 18** to Lolong Decl., Deposition of David Armas at 68:6-18.) When Gina Armas was asked whether USAA CIC had ever lied or misled her she testified that USAA CIC had never told her anything she believed to be untrue. (**Exhibit 17** to Lolong Decl., Deposition of Gina Armas at 125:13-15.) Therefore, Plaintiffs' own testimony supports the absence of any bad faith conduct on the part of USAA CIC.

The undisputed facts show that USAA CIC did not withhold any policy benefit from Armas and acted in good faith. USAA CIC investigated the claimed injuries and promptly paid the UIM limits when the medical expert opined, ***for the first time***, as to the reasonableness of Gina Armas' treatment. This case demonstrates good faith, not bad faith.

### D. Any Disagreement Among USAA CIC and Armas Is A "Genuine Dispute"

The Armases' breach of the implied covenant action should also still be dismissed pursuant to the "genuine dispute" doctrine. A "genuine dispute" simply recognizes that reasonable minds could differ about the validity or amount of the claim, and the difference of opinion does not rise to the level of a tort. (*Rappaport-Scott v. Inter-Insurance Exchange*, 146 Cal.App. 4th 831 (2007).)

The Armases' main disagreement with USAA CIC, made without any evidence, concerns an

alleged "delay" in paying the UIM policy benefits. However, USAA CIC did not arbitrarily or unreasonably delay payment. Instead, USAA CIC relied on the opinions of neurological surgeon and medical expert Dr. Eichbaum, who opined for over a year that Gina Armas' was not a candidate for surgery and that other factors, other than the subject accident contributed to her injuries, in arriving at its position. (**Exhibits 8-12** to Pierce Decl.) In comparison, David Armas' injuries were relatively minor as he stopped treating for his alleged injuries less than a year after the subject accident.

As Gina Armas' was paid the UIM limits, as to David Armas, at most, any dispute as to the value of his UIM claim amounts to nothing more than a "genuine dispute." When there is a "genuine dispute" as to whether an insurer has an obligation to pay policy benefits, the insurer does not breach the implied covenant by withholding those benefits. (*Lunsford v. Am. Guar. & Liab. Ins. Co.*, 18 F.3d 653, 656 (9th Cir. 1994).)

Under California insurance law, the phrase "genuine dispute" is a term of art. (*Fraley v. Allstate Ins. Co.*, 81 Cal. App. 4th 1282, 1292 (2000).) As the Court of Appeal explained in *Chateau Chamberay Homeowners Association v. Associated Inter'l Ins. Co.*, 90 Cal. App. 4th 335, 347 (2001) [emphasis added]:

> "It is now settled law in California that an insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith even though it might be liable for breach of contract." (*See also Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 721 (2007).)

Moreover, Plaintiffs must demonstrate that the alleged "delay" in paying the policy benefits was "unreasonable" or "without proper cause" in order to satisfy the bad faith claim. (*Jordan v. Allstate Ins. Co.*, 148 Cal.App.4th 1062, 1072 (2007).) Here, Plaintiffs cannot show any such unreasonableness or improper cause as there was a genuine dispute as to the value of Gina Armas' claim based on the opinions of medical expert Dr. Eichbaum. Similarly, Plaintiffs cannot show any such unreasonableness or improper cause as to the value of David Armas' claim based on the opinions of the reviewing doctor.

One way for an insurer to satisfy its burden of negating "unreasonableness" is by demonstrating the existence of a "genuine dispute" regarding the value of a loss. (*Wilson v. 21st*

*Century Ins. Co.*, 42 Cal.4th 713, 723 (2007).)

As to Gina Armas' UIM claim, as discussed above, USAA CIC reasonably relied on the medical opinions of Dr. Eichbaum in evaluating the value of her UIM claim. All **five** of the reports authored by Dr. Eichbaum stated that his opinions remained ***unchanged*** from his initial report where he opined that her symptoms were due to a ***previous*** motor vehicle accident, her symptoms were exacerbated by an accident ***after*** the subject collision and that surgery was ***not indicated***, ***nor would be indicated due to the subject accident.*** (**Exhibits 8-12** to Pierce Decl.) It was not until Dr. Eichbaum's deposition in April 2017 did he first opine as to the reasonableness of Gina Armas' treatment. Based on Dr. Eichbaum's change in opinion, USAA CIC promptly paid the policy limits one week after his deposition. (Pierce Decl. at ¶ 13.)

Moreover, USAA CIC's prompt payment of the UIM limits occurred over a matter of ***days***, not weeks and not months. Dr. Eichbaum was deposed on April 28, 2017. Gina Armas made a demand for the UIM policy limits on May 1, 2017. Exactly seven days later, USAA CIC agreed to pay Gina Armas the UIM policy limits. (Pierce Decl. at ¶ 13.) Here, USAA CIC acted in an extremely short period of time upon learning new information. Having kept an open mind in the investigation of the value of Gina Armas' claim, USAA CIC swiftly decided to exhaust the Policy limits based on Dr. Eichinger's new medical opinions.

As to David Armas' UIM claim, there was also a genuine dispute as to the value of his claim and USAA CIC did not delay in paying benefits. The value of his claim was reasonably disputed as his injuries were relatively self-contained, were an aggravation of prior injuries and he only sought chiropractic treatment.

Accordingly, given the genuine dispute presented here as to the value of both Plaintiffs' UIM claims ***and*** USAA CIC's prompt payment of the policy limits, Armas' bad faith claim fails.

## VII. PLAINTIFFS' CLAIM FOR PUNITIVE DAMAGES FAILS

### A. There is No Evidence of Fraud, Oppression, or Malice

Plaintiffs have no evidence to support a claim for punitive damages against USAA CIC. As argued above, Plaintiffs' claims for breach of contract and breach of the implied covenant both fail as a matter of law. But, even if an insurance company unreasonably delayed payment of insurance

benefits, which was not the case here, punitive damages cannot be awarded if the alleged tortuous conduct was merely the result of mistake of law or fact, honest error in judgment, overzealousness, or negligence. (*Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1288 n.14 (1994).) Only conduct that is evil, criminal, recklessly indifferent to the insured's rights, or conduct with a vexatious intent to injure warrants punitive damages. (*Id*.)

None of this type of conduct was present in this case. The undisputed evidence has demonstrated that USAA CIC engaged in a prompt and fair investigation, reasonably relied upon the opinions of its medical expert, and appropriately paid the UIM policy limits once Dr. Eichinger modified his opinion of Gina Armas' injuries.

An award of punitive damages is appropriate only where the wrongdoer "act[ed] *with intent* to vex, injure or annoy, or with a conscious disregard of the plaintiff's rights. Punitive damages are appropriate only if the defendant's acts are reprehensible, fraudulent or in blatant violation of law or policy." (*Hillenbrand, Inc. v. Ins. Co. of N. Am.*, 104 Cal.App.4th 784, 818 (2002) [emphasis added].) No such acts occurred in the present case. Indeed, Plaintiffs themselves testified that they are both currently USAA CIC insureds. (**Exhibits 17 and 18** to Lolong Decl.)

Plaintiffs' punitive damages claim fails because there was no conduct demonstrating fraud, oppression or malice by USAA CIC. The mere fact that USAA CIC did not pay the UM limits until its medical expert modified his opinions to indicate payment was warranted falls far short of what California law requires to justify an award of punitive damages.

**B. <u>No Clear and Convincing Evidence of Malice, Fraud or Oppression</u>**

On a motion for partial summary judgment with respect to punitive damages claim, the higher evidentiary standard of "clear and convincing" evidence applies. (*Basich v. Allstate*, 87 Cal.App.4th 1112, 1122 (2001).) In ruling on a motion for summary judgment of a claim for punitive damages, the court must evaluate whether the evidence submitted by the opposition (here, Plaintiffs) constitutes clear and convincing evidence of malice, fraud or oppression pursuant to the higher burden of proof for such a claim. (*Reader's Digest Ass'n v. Superior Court*, 37 Cal.3d 244, 252 (1984); *Basich v. Allstate Ins. Co., supra.*)

Indeed, where the plaintiff fails to submit clear and convincing evidence of malice, fraud or

oppression, the court must summarily adjudicate the punitive damages claim in the defendant's favor, even if the court concludes there is a triable issue of fact on the bad faith claim. (*Basich v. Allstate Ins. Co.*, *supra*, 87 Cal. App. 4th at 1118-1122.)

In a bad faith action, evidence that the insurer may have violated its duty of good faith and fair dealing does not alone establish that it acted with the requisite intent to justify an award of punitive damages. (*Patrick v. Maryland Cas. Co.*, 217 Cal.App.3d 1566, 1575 (1990); *Mock v. Michigan Millers Mut. Ins. Co.*, 4 Cal.App.4th 306, 328 (1992).) In order to establish that an insurer's conduct has gone sufficiently beyond mere bad faith to warrant a punitive award, it must be shown by *clear and convincing evidence* that the insurer has acted maliciously, oppressively or fraudulently. (*Mock v. Millers Mut. Ins. Co.*, *supra*, 4 Cal.App. 4th at 328.)

In this case, the Armases have alleged without any evidence that USAA CIC supposedly did not properly investigate their claims and/or delayed paying necessary sums. The Armases, however, have failed to produce any evidence or documentation to show that USAA CIC unreasonably withheld policy benefits. *Even if* Plaintiffs could produce such evidence – which they cannot – this does not constitute conduct rising to the level of malice, oppression or fraud.

As explored above, Gina Armas received the full UIM policy limits of $300,000 as provided for in the subject Policy, and, as a result, there was no breach of the insurance contract and certainly no breach of the implied covenant. Plaintiffs cannot show by any competent evidence that a breach of the insurance contract occurred when there has been no actual withholding of benefits. While the Armases may subjectively disagree with USAA CIC's initial valuation of the UIM claims, the facts and law both support that there was a genuine dispute as to the value of the claims, and, in any event, the Policy limits were promptly paid once the value was supported by the opinions of the medical expert.

In turn, the Armases cannot show that this conduct was evil, criminal, recklessly indifferent to the rights of Plainitffs, or done with a vexatious intention to injure the Armases. (*See Basich v. Allstate Ins. Co.*, *supra*, 87 Cal.App.4th at 1119.) On its face, USAA CIC's conduct did not rise to the level of fraud, oppression or malice – the payment of the UIM limits after the modification of Dr. Eichinger's opinion was simply the logical result of USAA CIC's reasonable reliance on the prior

opinions of Dr. Eichinger stating that Gina Armas' injuries were not related to the December 2012 collision.

## VIII. CONCLUSION

Absent any breach of the subject insurance Policy, this case should be dismissed in full. Because the Armases cannot point to any breach of the subject insurance contract, the Armases' causes of action for breach of contract and breach of the implied covenant fail as a matter of law. Moreover, there is no evidence of any conduct by USAA CIC that would support a prayer for punitive damages.

Accordingly, in light of the foregoing, USAA CIC respectfully requests that the Court grant its Motion for Summary Judgment, or in the alternative, Motion for Partial Summary Judgment.

Dated: March 20, 2019

DKM LAW GROUP, LLP

By______________________________

ROBERT S. McLAY
RSM@dkmlawgroup.com
JOSHUA N. KASTAN
JNK@dkmlawgroup.com
ANASTASIA M. LOLONG
AML@dkmlawgroup.com
535 Pacific Avenue, Suite 101
San Francisco, California 94133
Attorneys for Defendant
USAA CASUALTY INSURANCE COMPANY

**CASE NAME: ARMAS, et al. v. USAA CASUALTY INSURANCE COMPANY, et al.**

**ACTION NO.: USDC, Northern District of CA, San Jose Division Case No. 5:17-cv-06909-EJD**

**PROOF OF SERVICE**

I am a resident of the State of California. My business address is 535 Pacific Avenue, Suite 101, San Francisco, CA 94133. I am employed in the County of San Francisco where this service occurs. I am over the age of 18 years, and not a party to the within cause. I am readily familiar with my employer's normal business practice for collection and processing of correspondence for mailing with the U.S. Postal Service, and that practice is that correspondence is deposited with the U.S. Postal Service the same day as the day of collection in the ordinary course of business.

On the date set forth below, following ordinary business practice, I served a true copy of the foregoing document(s) described as:

**DEFENDANT USAA CASUALTY INSURANCE COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

**DEFENDANT USAA CASUALTY INSURANCE COMPANY'S SEPARATE STATEMENT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

**DECLARATION OF ANASTASIA M. LOLONG IN SUPPORT OF DEFENDANT USAA CASUALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

**INDEX OF EVIDENCE IN SUPPORT OF DEFENDANT USAA CASUALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

**DECLARATION OF GENE PIERCE IN SUPPORT OF DEFENDANT USAA CASUALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

**DECLARATION OF MINA VIDAURRI IN SUPPORT OF DEFENDANT USAA CASUALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

**DECLARATION OF CARLOS MENDEZ IN SUPPORT OF DEFENDANT USAA CASUALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

**[PROPOSED] ORDER GRANTING DEFENDANT USAA CASUALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

☒ (BY CM/ECF) I caused such documents to be filed and served by CM/ECF of the UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA.

Bryan D. Lamb, Esq.
Richard L. Frischer, Esq.
Lamb & Frischer Law Firm, LLP
1388 Sutter Street, Suite 815
San Francisco, CA 94109
Phone: (415) 997-9529
Fax: (415) 276-2885
richard@lambandfrischer.com

Kenneth J. Kroopf, Esq.
THE LAW OFFICES OF KENNETH J. KROOPF,
A PROFESSIONAL LAW CORPORATION
500 Lighthouse Avenue, Suite A
Monterey, CA 93940
Phone: (831) 373-7762
Fax: (831) 373-4714
ken@kroopflaw.com

***Attorneys for Plaintiffs***

☒ *(State)* I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on March 21, 2019 at San Francisco, California.

Summer J. Bertolet