Bryan D. Lamb (#197675)
Richard L. Frischer (#280339)
**LAMB & FRISCHER LAW FIRM, LLP**
1388 Sutter Street, Suite 815
San Francisco, CA 94109
(415) 997-9529
(415) 997-9272 (fax)
*Attorneys for Plaintiffs*

Kenneth J. Kroopf (#64300)
**THE LAW OFFICES OF KENNETH J. KROOPF,**
**A PROFESSIONAL LAW CORPORATION**
500 Lighthouse Avenue, Suite A
Monterey, California 93940
(831) 373-7762
(831) 373-4714(fax)
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

GINA ARMAS; DAVID ARMAS

Plaintiff,

v.

USAA CASUALTY INSURANCE COMPANY , et al.

Defendants.

Case No. 5:17-CV-06909-HRL

**PLAINTIFFS' OPPOSITION TO USAA CASUALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

Date: May 9, 2019
Time: 9:00 a.m.
Judge: Hon. Edward J. Davila

LAMB & FRISCHER LAW FIRM, LLP
1388 Sutter St., Ste. 815
San Francisco, CA 94109
TEL: (415) 997-9529
FAX: (415) 997-9272

LAMB & FRISCHER LAW FIRM, LLP
1388 Sutter St., Ste. 815
San Francisco, CA 94109
TEL: (415) 997-9529
FAX: (415) 997-9272

# TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 1

A. INSURANCE AGREEMENT ..... 1

B. THE TWO COLLISIONS AT ISSUE ..... 2

C. THE ARMASES FILED MEDICAL PAYMENT CLAIMS ARISING FROM THE DECEMBER 2012 COLLISION; USAA PAID ONLY APPROXIMATELY 20% ..... 2

D. DECEMBER 2012 COLLISION UIM PROCEEDINGS ..... 4

*1. The Armases Made UIM Claims in January 2015 ..... 4*

*2. Dr. Eichbaum Submitted His First Report On February 16, 2016 ..... 4*

*3. Dr. Eichbaum Submitted a Further Report on November 5, 2016 ..... 5*

*4. Shoulder Surgeon Dr. Gregg Satow Gave Opinions on June 27, 2016 Relating the Shoulder Surgeries and Time off Work to Collisions ..... 6*

*5. Attorney Michael Jones Created a Pre-Mediation Report on November 4, 2016 ..... 6*

*6. Gene Pierce Evaluated the Claim on November 15, 2016 ..... 6*

*7. USAA Found $150,000.00 of Gina Armas's UIM Claim to Be Undisputed ..... 8*

*8. Dr. Eichbaum Conducted a Medical Exam and Authored a Final Report ..... 8*

*9. Prior to Dr. Eichbaum's Deposition, He Advises USAA of an Inconsistent Opinion ..... 9*

*10. USAA Finally Offers the Policy Payment ..... 10*

E. GINA ARMAS FILED A WAGE LOSS CLAIM ARISING FROM THE 2012 COLLISION THAT *STILL* HAS NOT BEEN PAID NOR DENIED ..... 11

F. THE ARMASES FILED MEDICAL PAYMENT CLAIMS ARISING OUT OF THE JULY 2014 COLLISION AND USAA PAID APPROXIMATELY 44% OF THE CHARGED AMOUNTS ..... 12

G. GINA ARMAS FILED A WAGE LOSS CLAIM ARISING FROM THE 2014 COLLISION THAT *STILL* HAS NOT BEEN PAID NOR DENIED, AND USAA FALSELY TOLD HER NO CLAIM WAS SUBMITTED ..... 14

H. OVER THE LAST TWO YEARS THE ARMASES REPEATEDLY ADVISE USAA AND ITS COUNSEL THAT USAA ALREADY POSSESSES INFORMATION TO PAY MEDPAY AND EXTENDED BENEFITS CLAIMS 14

I. USAA TESTIFIED THAT THEY CONSIDER MEDICAL PAYMENT AND EXTENDED BENEFIT CLAIMS SEPARATELY FROM UIM CLAIMS ..... 16

**III. LEGAL ARGUMENT ..... 17**

A. DEFENDANT USAA'S BURDEN ON SUMMARY JUDGMENT ..... 17

B. THE MAJORITY OF EVIDENCE SUBMITTED BY USAA IS INADMISSIBLE AND SHOULD BE STRICKEN 18

C. USAA BREACHED THE INSURANCE CONTRACT BY FAILING TO PAY CLAIMS WITH SUPPORTING EVIDENCE ..... 20

*1. USAA Breached the Insurance Contract as to Gina and David Armas's MedPay Claims Arising from Both 2012 and 2014 Collisions ..... 20*

*2. USAA Breached the Insurance Contract by Completely Ignoring Gina Armas's Wage Loss Claims ... 21*

*3. USAA Breached the Insurance Contract to Gina Armas by Failing to Pay Undisputed Amounts Due, as Well As Failing to Reasonably Investigate Her Injuries ..... 22*

*4. David Armas's UIM Claim is Not at Issue. ..... 22*

D. USAA BREACHED ITS DUTY OF GOOD FAITH AND FAIR DEALING BY REFUSING TO RESPOND TO INSURANCE CLAIMS OVER THE COURSE OF YEARS AND REFUSING TO CONSIDER SUPPORTING EVIDENCE IN ITS POSSESSION ..... 22

E. USAA'S CONDUCT IS SUBJECT TO PUNITIVE DAMAGES AS IT WAS RATIFIED BY THE SENIOR VICE PRESIDENT AND EXECUTIVE DIRECTOR OF CLAIMS ..... 24

**IV. CONCLUSION ..... 25**

LAMB & FRISCHER LAW FIRM, LLP
1388 Sutter St., Ste. 815
San Francisco, CA 94109
TEL: (415) 997-9529
FAX: (415) 997-9272

LAMB & FRISCHER LAW FIRM, LLP
1388 Sutter St., Ste. 815
San Francisco, CA 94109
TEL: (415) 997-9529
FAX: (415) 997-9272

# TABLE OF AUTHORITIES

## Statutes

Federal Rule of Civil Procedure 56 ....................18
Federal Rules of Evidence 602 ....................18
Federal Rules of Evidence 702 ....................20
Federal Rules of Evidence 801 ....................20
Cal. Civil Code § 3294....................25
Cal. Ins. Code § 11580.2(h)....................24
10 Cal. Code Reg. § 2695.4(g) ....................23
10 Cal. Code Reg. § 2695.7 ....................22

## Case Law

*Akin v. Q–L Invs., Inc.*, 959 F.2d 521, 530 (5th Cir.1992). ....................18
*Amadeo v. Principal Mut. Life Ins. Co.,* 290 F.3d 1152, 1161 (9th Cir. 2002) ....................22, 23
*Bright v. Ashcroft*, 259 F. Supp. 2d 494, 498 (E.D. La. 2003) ....................18
*CMS Indus., Inc. v. L.P.S. Int'l, Ltd*., 643 F.2d 289, 295 (5th Cir.1981) ....................18
*Frommoethelydo v. Fire Ins. Exchange* (1986) 42 Cal.3d 208....................20
*Mariscal v. Old Republic Life Ins. Co*., 42 Cal. App. 4th 1617, 1623 (1996), as modified (Mar. 28, 1996), as modified (Mar. 29, 1996).)....................23
*Maslo v. Ameriprise Auto & Home Ins.* (2014) 227 Cal.App.4th 626, 636, as modified (July 22, 2014) ....................24
*Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.,* 210 F.3d 1099, 1102 (9th Cir. 2000) ....................18
*Wilson v. 21st Century Ins. Co.,* 42 Cal. 4th 713, 720 (2007), as modified (Dec. 19, 2007) ... ....................20,22

LAMB & FRISCHER LAW FIRM, LLP
1388 Sutter St., Ste. 815
San Francisco, CA 94109
TEL: (415) 997-9529
FAX: (415) 997-9272

## I. INTRODUCTION

Plaintiff respectfully requests Defendant's Motion be denied in its entirety. This bad faith case concerns Gina and David Armases multi-year quest to have USAA simply pay insurance claims. The Armases were involved in two collisions: December 2012 and July 2014. David Armas suffered lower back and hip soft tissue injuries. Gina Armas suffered from a serious shoulder condition and neck condition, necessitating three surgeries in total. From the 2012 collision, the Armases submitted several medpay claims, a wage loss claim, and UIM claims. From the 2014 collision, the Armases submitted several medpay claims and two wage loss claims.

Over the years that followed, USAA treated the Armases unfairly and in bad faith. USAA relied on outside reviewers whose qualifications are unknown to USAA to recommend denying the Armases medpay claims, even though USAA had a retained expert in its UIM matter testify that much of the treatment is reasonable and related to a collision. USAA repeatedly refused to consider Gina Armas's wage loss claim and misrepresented at several points whether she even filed a wage loss claim, going so far as to remove claim forms from the evidence she submitted to try to convince her attorney no claim was filed. To this day, USAA has not paid nor denied the wage loss forms Gina Armas submitted in 2016. Finally, USAA relied on a theory in its UIM defense that Gina Armas's neck surgery did not relate to a 2012 collision based upon the claim that Gina Armas only had transient neck pain, when its adjuster documented her pain as daily and worsening, and its expert testified that there was continuous neck pain.

Plaintiff has retained claims expert Harvey Maxey to submit opinions, who, along with the legal principles set forth, concludes that USAA acted in bad faith in this matter. Furthermore, USAA has continually refused to consider the evidence in its possession, and made numerous misrepresentations to Plaintiffs, warranting imposition of punitive damages.

## II. STATEMENT OF FACTS

### A. Insurance Agreement

Plaintiffs were insured by USAA during the two collisions at issue: December 27, 2012 and July 26, 2014. (See 2012 policy, Exh. 19 to Lolong Decl. ISO Motion; 2014 policy Exh. A to Frischer Decl. ISO Opposition.) First, the Armases purchased medical payments coverage, which is a no-fault

LAMB & FRISCHER LAW FIRM, LLP
1388 Sutter St., Ste. 815
San Francisco, CA 94109
TEL: (415) 997-9529
FAX: (415) 997-9272

coverage that pays "the reasonable fee for medical services… These fees and expenses must: a. Result from [bodily injury] sustained by a covered person in an auto accident; and b. Be incurred for services rendered within one year of the date of the auto accident." (Exh. 19 to Lolong Decl. at ARMAS_CP_004, 34.) The policy had a medical payments limit of $100,000.00. (*Id.* at ARMAS_CP_004; Exh. A to Frischer Decl. at p. 1.) Second, the Armases purchased extended benefits coverage to reimburse them 85% of lost wages, up to $2,000.00 per 30-day period, for which they were disabled due to a covered collision. (*Id.* at ARMAS_CP_004, 19.) Third, the Armases purchased underinsured motorists bodily injury coverage with a policy limit of $300,000.00 per person and $500,000.00 per collision. (*Id.*)

**B. The Two Collisions At Issue**

The details of the underlying incident are not in dispute: on December 27, 2012, the Armases were rear-ended by an underinsured motorist while stopped at a red light. In the 2012 collision, David Armas suffered soft tissue injuries to his neck and back and had a course of treatment with chiropractic care. (Exh. 30 to Frischer Decl.) Gina Armas had significantly more treatment, suffering shoulder and neck injuries that resulted in a shoulder surgery and eventually a spinal surgery disc replacement. (*Id.*)

On July 26, 2014, the Armases were rear-ended again. This collision exacerbated their symptoms, and caused a need for another shoulder surgery. (Exh. 31 to Frischer Decl.)

**C. The Armases Filed Medical Payment Claims Arising from the December 2012 Collision; USAA Paid Only Approximately 20%**

Following the December 2012 collision, the Armases (or medical providers or attorneys on their behalf) submitted a number of medical payments claims to USAA, mostly constituting physical therapy and chiropractic care (See Exh. 47 to Frischer Decl.)[1] During the period of time the Armases made medical payments claims, Mina Vidaurri was the file handler and first point of contact on the claim. (Vidaurri Depo. at 62:19-25, Exh. C to Frischer Decl.)

As of November 11, 2013, close to the one year time limit for medical payment claims, Gina Armas had submitted $18,918.71 in charges, and USAA had paid only $2,630.73. (*Id.* at 128:5-20.)

[1] Exh. 47 is a log of medical payments claims and paid amounts, as of November 11, 2013, for each Gina Armas and David Armas. (Vidaurri Depo. at 125:24-127:17.)

LAMB & FRISCHER LAW FIRM, LLP
1388 Sutter St., Ste. 815
San Francisco, CA 94109
TEL: (415) 997-9529
FAX: (415) 997-9272

David Armas had submitted $11,033.35 in charges, and USAA had paid only $3,428.00. (*Id.* at 129.) Shortly thereafter, on January 14, 2014, the adjuster handling the file closed the claim as no new bills had been provided and the "claim is resolved." (*Id.* at 71:7-15.)

When medical claims are made to USAA, normally the claims are made directly to its vendor Auto Injury Solutions (AIS). (*Id.* at 42:22-43:2.) AIS then produces a physician advisor review, or PHAD, which USAA *claims* is authored by a medical professional in the same specialty as the treatment reviewed. (*Id.* at 64:21-66:12.)

However, as Ms. Viduarri testified both in her capacity as an adjuster handling this claim and the corporate representative on handling this claim, she does not know the qualifications of the AIS medical reviewers. Specifically, when asked about Dr. David Chen (purported author of Exh. 6 to her declaration in support of USAA's motion), Ms. Vidaurri testified that she does not know where he is licensed, where he attended school, nor how many years he practiced. (*Id.* at 81:22-82:11.) She does not know his specialty. (*Id.* at 83:21-84:2.) **USAA does not receive any sort of documentation about what the AIS medical professional's expert credentials are.** (*Id.* at 82:12-83:7.) **At no time did USAA know what Dr. Chen or any other medical reviewers' credentials are.** (*Id.* at 82:21-23.) Even if the information could be requested, USAA made no effort to request it prior to Ms. Vidaurri's deposition on March 5, 2019. (*Id.* at 84:6-9.)

Although USAA may use authoritative guidelines in determining reasonable treatment, USAA's own adjusters do not know what the guidelines are that the AIS reviewers rely upon. (*Id.* at 84:25-85:9; 86:11-23.) Ms. Vidaurri is not aware whether USAA has a copy of the authoritative guidelines on file, nor has she ever looked at any of the guidelines in her career or been provided guidelines by USAA. (*Id.* at 85:10-12; 87:3-8.)

For some of the bills that were paid, USAA paid less than the billed amount of the service. (See Exh. 47 to Frischer Decl.) For example, Dr. Borges' charges were regularly reduced, some as substantially as $896.40 to $270.00. (*Id.* at ARMAS_LR31_CF_0448.) When payments are reduced, it is because AIS has determined through an Explanation of Reimbursement that the amount billed is not reasonable. (Vidaurri Depo. 88:20-90:12, Exh. C to Frischer Decl.) USAA relies upon AIS to make that determination, but USAA does not know how AIS makes that determination. (*Id.* at 91:1-7.) The

LAMB & FRISCHER LAW FIRM, LLP
1388 Sutter St., Ste. 815
San Francisco, CA 94109
TEL: (415) 997-9529
FAX: (415) 997-9272

explanations of reimbursement do not state how the reduced rates are determined. (*Id.* at 91:8-16.) In Ms. Vidaurri's 13 years of experience with USAA, she has never seen an explanation of how AIS determines that a reasonable payment is lower than a billed amount. (*Id.* at 92:8-19.) USAA does nothing but rely on AIS's recommendation, and Ms. Vidaurri does not recall a time she has ever paid a higher amount than AIS recommended. (*Id.* at 93:25-94:6.) Still, USAA does not take any action on its own to determine reasonable charges of treatment. (*Id.* at 93:13-24.)

**D. December 2012 Collision UIM Proceedings**

***1. The Armases Made UIM Claims in January 2015***

Following the collision, on January 28, 2015, USAA was notified that Plaintiffs had obtained the maximum limits of insurance available from the underinsured motorist, with Gina Armas receiving $15,000.00 and David Armas receiving $10,000.00. (Motion at 6:28-7:6.) At that time, the Armases demanded arbitration of the UIM claim arising out of the 2012 collision. (*Ibid.*)

At first, the Armases attempted to negotiate a settlement with USAA. USAA assigned an adjuster, Gene Pierce, and attorney Michael Jones, to litigate the UIM matter. Mr. Jones is a USAA employee. (Pierce Depo 85:2-14, Exh. B to Frischer Decl.) During the UIM matter, USAA subpoenaed the Armases' treating medical providers records. USAA also took testimony of treating medical providers, including Gina Armas's shoulder surgeon Dr. Gregg Satow, orthopedist Dr. Mark Howard, neck surgeon Dr. Serena Hu. (See Exh. 31 to Frischer Decl.) Additionally, USAA hired its own retained neurological surgeon, Dr. Eldan Eichbaum, to provide his medical opinions as to Gina Armas's claim.

***2. Dr. Eichbaum Submitted His First Report On February 16, 2016***

Dr. Eldan Eichbaum's first report was authored February 16, 2016. (Exh. 8 to Pierce Decl. ISO Motion.) In the 2/16/16 report, Dr. Eichbaum lists Gina Armas's records he reviewed. Overlapping with Gina Armas's 2012 medical payments claims, Dr. Eicbhaum reviewed chiropractic care from Dr. Borges from 1/2/13 – 7/15/13 (ARMAS_LR31_CF_1083-84), treatment from Dr. Erwin J. Deiparine from 7/16/13, 7/25/13, 8/29/13, 9/9/13 (*id.* at 1084-1085), and physical therapy from Tony Laguna, PT from 9/16/13 to 10/10/13 (*id.* at 1085). (*Id.*) Overlapping with Gina Armas's 2014 medical payments claims, Dr. Eichbaum reviewed physical therapy treatment by Bay Physical Therapy

including treatment by Shelley Kroopf, PT, from 8/12/14-10/27/15. (*Id.* at 1088.) Additionally, Dr. Eichbaum reviewed a large amount of records from other providers, such as Dr. Gregg Satow's records, Dr. Mark Howard's records, and MRI scans. (*Id.* at 1087-92.) Dr. Eichbaum later testified his report truthfully stated the records reviewed. (Eichbaum Depo. 7:4-17, Exh. E to Frischer Decl.)

Dr. Eichbaum's wrote on 2/16/16: "In summary, I believe she most likely suffered a cervical strain/sprain from the subject motor vehicle accident. She most likely had pre-existing cervical spondylosis and disc degeneration at the level of C6-7, *which became transiently symptomatic from her motor vehicle accident in 2012*." (*Id.* at 1093, emphasis added.) After discussing his opinion that some symptoms may be related to a prior collision and exacerbation from the 2014 collision, he concludes that further treatment, including surgery, is not necessary. (*Ibid.*)

However, there is no support for the claim that Gina Armas's neck pain was transiently symptomatic. Dr. Eichbaum later testified that her neck pain lasted for about "four years or so" (Dr. Eichbaum Depo. at p. 12-13, Exh. E to Frischer Decl.) and that she has had neck pain consistently since the 2012 collision per her medical records. (*Id.* at 16:1-5.)

***3. Dr. Eichbaum Submitted a Further Report on November 5, 2016***

Dr. Eichbaum authored further reports. On November 5, 2016, after reviewing records regarding Gina Armas's April 2016 neck surgery and follow up treatment for the first time over a half of a year after it occurred, he authored another report. (Exh. 10 to Pierce Decl. ISO Motion.) He also reviewed Gina Armas's deposition taken in the UIM matter, primary care physician medical records, and further imaging studies. (*Id.* at 1097-1103.) Now, finding that "[s]he complained of pain for several years and there was mainly one disc abnormality, so I do not believe it was unreasonable to proceed with surgery, but as I stated previously, I did not believe that she was an ideal surgical candidate." (*Id.* at 1103.) It was still his opinion that her pain should have resolved within a year with therapy and chiropractic care. (*Id.* at 1103.)

After receiving his November 5, 2016 report, Mr. Pierce recognized that Dr. Eichbaum had opined that Gina Armas's neck surgery was reasonable. (Pierce Depo. 151:6-152:3, Exh. B to Frischer Decl.) Gene Pierce's declaration advises this Court, contradicting his testimony, that he first learned Dr. Eichbaum opined Gina Armas's neck surgery was reasonable was on April 28, 2017.

LAMB & FRISCHER LAW FIRM, LLP
1388 Sutter St., Ste. 815
San Francisco, CA 94109
TEL: (415) 997-9529
FAX: (415) 997-9272

LAMB & FRISCHER LAW FIRM, LLP
1388 Sutter St., Ste. 815
San Francisco, CA 94109
TEL: (415) 997-9529
FAX: (415) 997-9272

***4. Shoulder Surgeon Dr. Gregg Satow Gave Opinions on June 27, 2016 Relating the Shoulder Surgeries and Time off Work to Collisions***

USAA took the deposition of Gina Armas's shoulder surgeon in the UIM matter on June 27, 2016. (Dr. Satow Depo, Exh. F to Frischer Decl.) In his deposition, he reviewed a number of work restriction notes he wrote, including consecutive series of notes for restrictions for total temporary disability covering the time periods April 7, 2014 to July 28, 2014 and from April 9, 2015 to May 27, 2015, and restriction prohibiting lifting over 5 lbs from July 28, 2014 to August 8, 2014 and from May 26, 2015 to July 26, 2015. (*Id.* at 50:15-53:3.) Dr. Satow testified all of those restrictions were related to his care for Mrs. Armas's shoulder. (*Id.* at 53:5-9.) Dr. Satow found that his treatment of Gina Armas's shoulder from December 2012 until the July 2014 collision related to the December 2012 collision. (*Id.* at 55:21-55:19.) Dr. Satow found that the July 2014 collision caused the need for Gina Armas's second shoulder surgery. (*Id.* at 59:4-16.)

***5. Attorney Michael Jones Created a Pre-Mediation Report on November 4, 2016***

Concurrently, on November 4, 2016, attorney Michael Jones created a pre-mediation report to advise USAA regarding an upcoming mediation. (Pierce Depo. 111:7-15, Exh. B to Frischer Decl.) Litigation Manager Pierce took this report into consideration. (*Id.*) In strategizing for the 2012 UIM claim, Michael Jones advised, and Gene Pierce agreed, that, in regards to Gina Armas, "All special damages, including those for the cervical surgery, neck physical therapy, and physical therapy for the shoulder incurred after July 30, 2014, and lost earnings, is solely the responsibility of the subsequent accident." (*Id.* at 117:9-118:21.) Attorney Jones concluded that he believed "the value of Gina's claim to be around 225,000." (*Id* at 118:22-6.)

***6. Gene Pierce Evaluated the Claim on November 15, 2016***

On November 15, 2016, litigation manager Gene Pierce completed an evaluation for Gina Armas's UIM claim. (Evaluation, Exh. 30 to Frischer Decl.; Pierce Depo. 31:16-32:23; 76:12-17, Exh. B to Frischer Decl.) This evaluation was relied upon to make a settlement offer. (*Id.* at 77:14-17.) In his evaluation, he found that Gina Armas's medical records stated the fact that Gina Armas had daily neck pain that worsened. (*Id.* at 34:9-15.) Mr. Pierce's summary does not state that Mrs. Armas's neck pain subsided at any point—Mr. Pierce testified it is likely that if Gina Armas's neck pain subsided

for a period of time, he would have included it in his summary. (*Id.* at 34:24-35:4; Evaluation, Exh. 30 to Frischer Decl.) Mr. Pierce also included in his summary the following pertinent treatment: she had multiple injections to her shoulder; she had a arthroscopic shoulder surgery on April 10, 2014 to repair a labral tear and rotator cuff tear; she had a second shoulder surgery on April 9, 2015 of the same nature; and she had a cervical disc replacement of C6 and C7 on April 12, 2016. (Exh. 30, ARMAS_LR31_CF0027-28.) Mr. Pierce considered the opinion of Dr. Howard, which concluded that she was having pain from a C6-7 disc protrusion and at the time of his consultation in November 2015, surgery could be considered if she went through "physical therapy, injections, etc." and the pain was not tolerable. (Exh. 30.) Mr. Pierce recognized Dr. Howard did not appear to know of Mrs. Armas's physical therapy and only a passing knowledge of her injection. (*Id.*) Mr. Pierce also considered testimony from shoulder surgeon Dr. Gregg Satow, recognizing Dr. Satow "attributed the first surgery to the December accident and the second surgery to the July 2014 accident." (*Id.*)

Reviewing Mrs. Armas's wage loss, Mr. Pierce considered that Gina Armas was off of work as a school psychologist with Monterey Peninsula Unified School District from April 10, 2014 to August 1, 2014 (with the school year ending in June) following her 2014 shoulder surgery, and "confirmed" the time off via records from her employer. (*Id;* Pierce Depo. 43:6-44:14, Exh. B to Frischer Decl.) Mr. Pierce found the wage loss to be caused by the 2014 shoulder surgery. (*Id.* at 44.)

Mr. Pierce considers in a section of his 11/15/16 evaluation titled "Negotiation points" Dr. Eichbaum's findings from February 16, 2015. (Exh. 30*,* ARMAS_LR31_CF0029.) Notably, Mr. Pierce relies on and quotes Dr. Eichbaum's initial report prior to Mrs. Armas's surgery, rather than the two newer reports that followed. (*Id.*) Mr. Pierce recognizes that "Dr. Eichbaum's opinion may change after he reviews the surgical records from Stanford in regards to her cervical surgery. Thus, it remains possible that the 12/27/12 [collision] contributed to the need for her cervical surgery along with the subsequent accident." (*Id.*) Mr. Pierce also concludes as to Gina Armas's shoulder complaints: "it is more likely than not the [2012] accident caused the need for the first shoulder surgery. We can blame the second shoulder surgery entirely on the July 2014 accident." (*Id.*)

When it came to claim valuation, Mr. Pierce did not agree with Attorney Jones's recommendation of offering $225,000.00. (Pierce Depo. 119:3-9, Exh. B to Frischer Decl.) Instead,

LAMB & FRISCHER LAW FIRM, LLP
1388 Sutter St., Ste. 815
San Francisco, CA 94109
TEL: (415) 997-9529
FAX: (415) 997-9272

Mr. Jones requested settlement authority for $150,000.00 after consulting with the Executive Director and possibly the Director too. (*Id.* at 52:23-53:16.) Mr. Pierce calculated Gina Armas's special damages as $101,686. (Exh. 30 at ARMAS_LR31_CF_0027.) The general damages calculated as between $15,944 and $65,944. (*Id.*) When asked how he came up with such precise general damages figures, Mr. Pierce explained that the form pre-fills so that the settlement value adds up to the special plus general damages, and it could be calculated backwards such that the settlement value is inputted and general damages are calculated. (*Id.* at 54:4-24.) Mr. Pierce could have determined he would ask for $150,000.00 because that was the limit of authority from the Executive Director. (*Id.* at 55:9-24.) Asking for more settlement authority would depend on the turnaround time to get authority. (*Id.* at 55:25-56:9.) To request authority between $150,000.00 to $350,000.00, Mr. Pierce would have to ask the regional committee, consisting of several executives or vice presidents. (*Id.* at 12:5-20.) Again, USAA's attorney recommended to offer $225,000.00 at that time. The claim did not resolve.

***7. USAA Found $150,000.00 of Gina Armas's UIM Claim to Be Undisputed***

Following mediation, on December 8, 2016 USAA understood that Gina Armas was demanding $300,000.00 to resolve the UIM claim. (*Id.* at 122:10-16.) In response, USAA sent a California Code of Civil Procedure § 998 offer to Gina Armas. (*Id.* at 122:17-123:2.) When USAA made the offer, Gene Pierce viewed Gina Armas's claim as worth $150,000.00. (*Id.* at 123:3-7.) Gene Pierce recognized that $150,000.00 of the claim was not in dispute, and USAA was willing to pay that amount. (*Id.* at 123:11-21.) USAA however did not pay that amount in December 2016; USAA would require Gina Armas to resolve her entire claim. (*Id.* at 124:2-8.)

***8. Dr. Eichbaum Conducted a Medical Exam and Authored a Final Report***

On December 27, 2016, Dr. Eichbaum received further medical records from Stanford, and did not change his opinion. (Exh. 11 to Pierce Decl. ISO Motion.) Specifically, these new records concerned post-surgical treatment occurring in August and September 2016, and no records pertaining to any treatment prior to her surgery. (*Id.*)

On March 20, 2017, Dr. Eichbaum authored a report after a medical examination of Gina Armas. (Exh. 12 to Pierce Decl. ISO Motion.) Notably, Dr. Eichbaum reported that Gina Armas advised him that prior to surgery she had constant neck pain. (*Id.* at ARMAS_LR31_CF_1076.) USAA

LAMB & FRISCHER LAW FIRM, LLP
1388 Sutter St., Ste. 815
San Francisco, CA 94109
TEL: (415) 997-9529
FAX: (415) 997-9272

LAMB & FRISCHER LAW FIRM, LLP
1388 Sutter St., Ste. 815
San Francisco, CA 94109
TEL: (415) 997-9529
FAX: (415) 997-9272

has no information contradicting Gina Armas's report. (Pierce Depo 153:13-154:5.) In his conclusion, Dr. Eichbaum still finds: "I believe she sustained a cervical strain/sprain from the subject motor vehicle accident. She had pre-existing cervical spondylosis and disc degeneration at the level of C6-7, <u>which became transiently symptomatic...</u>" (Exh. 12 to Pierce Decl. ISO Motion at ARMAS_LR31_CF_1079.) Dr. Eichbaum still concludes, "I do not believe that any further treatment is necessary for her cervical spine due to the 2012 motor vehicle accident. Surgery is not indicated at this time, nor would be indicated due to the motor vehicle accident." (*Id.*)

As is plainly obvious from Dr. Eichbaum's report, it is internally inconsistent as to whether Gina Armas had consistent neck pain.

### *9. Prior to Dr. Eichbaum's Deposition, He Advises USAA of an Inconsistent Opinion*

On April 23, 2017, Dr. Eichbaum advised attorney Michael Jones, who advised Gene Pierce, that Dr. Eicbhaum "intended to testify that the December 27, 2012 collision contributed up to 20 percent of Gina Armas's need for neck surgery." (Pierce Depo 134:5-18.) USAA thus first learned of Dr. Eichbaum's change of opinion before his deposition.

On April 28, 2017, Dr. Eichbaum was deposed in the UIM matter. (Eichbaum Depo 5:8-17.) Dr. Eichbaum testifies for the defense approximately 80 percent of the time. (*Id.* at 39:14-25.) He believes Liberty Med-Legal, through whom USAA hired him in this matter, only assigns him cases for the defense or on behalf of an insurance company. (*Id.* at 36:22-37:3; 39:2-5.)

At first when asked if all of the medical treatment he reviewed was reasonable and necessary, Dr. Eichbaum stated:

> Again, I'd have to look at everything, and if you want me to go through piece by piece, but I think in general, she was treated well, because she basically was treated conservatively, mostly with therapy and chiropractic care again, depending on how many sessions she had of each, and maybe some may be a little excessive; again, there's no set rule. And she underwent the other treatments of you know, nonoperative modalities. Besides the therapy, she tried medications and injections and continued to have symptoms. And so I think it was reasonable, yes.

(*Id.* at 14:1-15.) Dr. Eichbaum was asked further:

> Q. Okay. **I just want to parse out, when you say "generally," is there any medical treatment, as you sit here today, that you would say was not necessary that Ms. Armas had, in terms of the medical treatment you reviewed?**
>
> **A. No.**

LAMB & FRISCHER LAW FIRM, LLP
1388 Sutter St., Ste. 815
San Francisco, CA 94109
TEL: (415) 997-9529
FAX: (415) 997-9272

(*Id.* at 14:16-21, emphasis added.)

Dr. Eichbaum was asked whether he had any opinions as to whether Gina Armas's recommendations to be excused from work were reasonable: "I mean, I have to look at them in particular, each one, but I would assume that they're reasonable." (*Id.* at 28:9-15.) When asked for more detail, he had no opinion as to time off following shoulder surgery, but opined that Gina Armas's four months off of work was reasonable following neck surgery. (*Id.* at 28:16-29:13.)

**Contradicting his repeated reports about transient neck pain, Dr. Eichbaum testified that Gina Armas's neck pain did not reside after the 2012 collision. (*Id.* at 16:1-5.)**

When asked why Dr. Eichbaum changed his opinion, he stated: "After reviewing her situation for the years that she's had her symptoms, I don't think it's unreasonable to attempt surgery, as she has undergone nonoperative modalities. I would agree, in the first two or three years I would not have offered her surgery, as a surgeon…. [¶] But if someone has undergone treatment for four years, as she had, and had not improved, and she really only has a single-level mild abnormality, it's not unreasonable to proceed with surgery in that situation." (*Id.* at 22:13-23:16.) He believes Gina Armas's surgeon Dr. Serena Hu to be an excellent doctor, and if she recommended surgery based off of multiple visits with Gina Armas, he would agree with that recommendation. (*Id.* at 23:24-24:2.)

Dr. Eichbaum's rationale makes no logical sense. First, Dr. Eichbaum did not learn of any new pre-operative treatment after learning in late 2016 of Gina Armas's surgery. In November 2016 after reviewing surgical records (Exh. 10 to Pierce Decl. ISO Motion), the only new records Dr. Eichbaum reviewed were post-surgical records (Exh. 11 to *id.*). Certainly nothing had changed since his March 2017 examination. Second, he knew of Dr. Hu's surgical recommendation, to which he testified he would agree with, since December 27, 2016. (Exh. 10 to *id.*) And, as discussed thoroughly above, neither Dr. Eichbaum nor USAA had any reason to believe Gina Armas's neck pain was only transitory at any time. In fact, both USAA and Dr. Eichbaum had been relying on unsupported information about transitory neck pain up until this date.

***10. USAA Finally Offers the Policy Payment***

Gene Pierce conducted a final evaluation of Gina Armas's claim after Dr. Eichbaum's deposition. (Exh. 31 to Frischer Decl.; Pierce Depo. 66:5-20, 76:12-77:17.) Mr. Pierce requested $285,000.00 in settlement authority (the policy limit of $300,000.00 minus the underlying coverage

LAMB & FRISCHER LAW FIRM, LLP
1388 Sutter St., Ste. 815
San Francisco, CA 94109
TEL: (415) 997-9529
FAX: (415) 997-9272

offset). (*Id.* at 66:21-67:2.) He obtained that authority by requesting it of the regional committee. (*Id.* at 67:3-8.) In this final evaluation, Mr. Pierce now considered more medical damages due to the change in Dr. Eichbaum's opinion. (*Id.* at 69:5-12.) Because of Dr. Eichbaum's deposition, Mr. Pierce found that the "case is worth the policy limits at that point, so I basically just asked for 285- and documented what we had." (*Id.* at 136:13-137:4.) Mr. Pierce did not consider any change in the amount of lost wages, as his valuation was based upon the remaining policy limits. (*Id.* at 138:22-139:2.)

On May 8, 2017, two days prior to the start of arbitration, USAA offered to pay the policy limits of its UIM policy. (Pierce Decl. at ¶ 13, ISO Motion.) Contrary to Mr. Pierce's declaration, therefore, USAA agreed to pay the policy limits 15 days after getting Eichbaum's modified opinion. Any lawyer knows that costs increase greatly each day before a trial or arbitration. Mr. Pierce recognized that in his experience legal fees increase the closer to arbitration, more work has to be done before an arbitration and the amount of work increases each day. (*Id.* at 88:15-89:24.)

### E. Gina Armas Filed a Wage Loss Claim Arising from the 2012 Collision that *Still* Has Not Been Paid Nor Denied

Concurrently with UIM proceedings, in July 2016 Gina Armas called USAA to advise that she wishes to file wage loss claims under her extended benefits policy. (Vidaurri Depo. 96:12-97:15, Exh. C to Frischer Decl.) By October 26, 2016, Gina Armas had called USAA and spoke with UIM litigation manager Gene Pierce to express her frustration about opening a wage loss claim, which she said was not being handled properly by USAA. (Pierce Depo. 24:7-25:1, Exh. B to Frischer Decl.) On September 22, 2016, Gina Armas sent Mr. Pierce a copy of her wage loss claim, which he then forwarded to manager Patrick Brennan. (*Id.* at 99:1-101:1; 10/11/16 E-mail, Exh. 63 at ARMAS_LR31_CF_0913 to Frischer Decl.)

Exh. 45 is a copy of Gina Armas's wage loss claim and supporting documentation. (Exh. 45 to Frischer Decl.; Vidaurri Depo. 101:6-24, Exh. C to Frischer Decl.) In her claim, she is requesting reimbursement for lost wages due to absences from April 10, 2014 to August 3, 2014, while advising her employment ended June 10, 2014 that year. (Exh. 45.) Gina Armas included documents from her employer showing rates of pay and job duties, as well as notes from Dr. Satow. (Exh. 45.) As USAA already knew at this point, Dr. Satow testified that Gina Armas was off of work during this time period

LAMB & FRISCHER LAW FIRM, LLP
1388 Sutter St., Ste. 815
San Francisco, CA 94109
TEL: (415) 997-9529
FAX: (415) 997-9272

related to his care of her shoulder injury, which in turn was related to the 2012 collision. As USAA already determined itself, Mrs. Armas indeed missed this time from work following her first shoulder surgery, which USAA determined "more likely than not" related to the 2012 collision. (Exh. 30*,* ARMAS_LR31_CF0029.)

On October 12, 2016, Mr. Brennan responded to Mr. Pierce to let him know there was an adjuster, Melinda Yarrito assigned to the claim. (Vidaurri Depo 116:4-18, Exh. C to Frischer Decl.) On October 26, 2016, the Armases again called Mr. Pierce regarding the extended benefits claim, leaving a voicemail, and Mr. Pierce then e-mailed Mr. Brennan, Ms. Yarrito, Ms. Jill McCall (Litigation Director), and one other person to remind them of the claim. (Pierce Depo. 106:14-108:25, Exh. B to Frischer Decl.; 10/26/16 E-mail, Exh. 46 to Frischer Decl.) Mr. Pierce marked the e-mail high importance and wrote that although Mr. Brennan arranged for the first party coverage to be opened, it has since been closed and Gina Armas is still waiting for a phone call. (*Id.*)

Ms. Yarrito then called Gina Armas and left a voicemail misrepresenting the policy language and stating that the extended benefit wage loss statute was only one year, so that it would only cover wage loss prior to December 27, 2013. (Vidaurri Depo. 117:4-23.) This is incorrect; the limit is two years. (*Id.* at 118:9-19.) No one corrected Ms. Yarrito's erroneous advice. (*Id.* at 119:14-20.) **After Ms. Yarrito gave this erroneous advice, Ms. Yarrito took no further action on the wage loss claim.** (*Id.* at 120:3-8.) **USAA recognizes that Gina Armas made a wage loss claim for this collision, but also recognizes this claim was never accepted nor denied by USAA.** (*Id.* at 16:9-24.)

### F. The Armases Filed Medical Payment Claims Arising out of the July 2014 Collision and USAA Paid Approximately 44% of the Charged Amounts

Concurrently with their UIM claim from the December 2012 collision, the Armases requested medical payments coverage from USAA for the July 2014 collision. (Medpay Logs, Exhs. 89 & 90 to Frischer Decl.; Mendez Depo. 120:22-122:24.) USAA was advised for Gina Armas charges totaling $10,370.00 and paid only $3,463.75 and for David Armas charges of $8,444.00 and paid only $4,916.83. (Exhs. 89 & 90.) The vast majority of the charges were from Bay Physical Therapy & Fitness Center. (*Id.*)

Similarly to the 2012 claims, USAA used vendor AIS to purportedly make determinations on

LAMB & FRISCHER LAW FIRM, LLP
1388 Sutter St., Ste. 815
San Francisco, CA 94109
TEL: (415) 997-9529
FAX: (415) 997-9272

the insurance claims. Adjuster Carlos Mendez worked on this claim. (Mendez Decl. at ¶ 3-4 ISO Motion.) As Mr. Mendez advises, two different reviewers from AIS denied these claims. (*Id.* and Exhs. 21-30 to Mendez Decl. ISO Motion.) However, Mr. Mendez testified that he does not even know if, for example, reports he attached to his declaration attributed to Dr. Timothy Chen was actually written by Dr. Chen. (Mendez Depo. 95:5-97:14, Exh. D to Frischer Decl.) He just assumes from the signature line that this unsworn statement was written by a doctor. (*Id.* at 97:4-14.) Mr. Mendez has no information, other than the fact the hearsay declarant wrote M.D. after his name, that he is in fact a licensed medical doctor. (*Id.* at 112:5-8.) Mr. Mendez does not know the qualifications of Dr. Chen, where he is licensed, what specialty he has, or how long he has been practicing. (*Id.* at 104:3-13.) Mr. Mendez is unaware of any file kept by USAA with information about the reviewers' qualifications, and Mr. Mendez never looked into their qualifications. (*Id.* at 107:2-20.) Similarly, Mr. Mendez does not have information about Dr. Boguslavsky's qualifications or whether he is a licensed doctor, other than the fact he put an MD after his name. (*Id.* at 112:17-113:13.)

Mr. Mendez relied completely on these AIS determinations to determine whether or not medical treatment is reasonable or related to a claim. (*Id.* at 114:25-115:3.) Mr. Mendez testified that he might review medical records, "not to understand or make any final decision of whether we're going to pay or not. Because that is not my job as the adjuster. That is the medical professional's job…. I would never use it to make a decision to pay a bill." (*Id.* at 115:17-116:9.) This testimony flatly contradicts the declaration he provided this court, which stated that he relied upon the claim file documents and medical files, in addition to the AIS reviews, to determine the reasonableness, necessity, and relation of treatment for medical payments benefits. (Mendez Decl. at ¶ 7.)

Just as with the earlier medical payments claims, for the minority of bills actually paid by USAA, the amounts paid were generally not the full amount of the bills. (Medpay Logs, Exhs. 89 & 90 to Frischer Decl.) In sending these reduced payments, Mr. Mendez relies upon AIS's evaluation. (Mendez Depo 52:8-54:4.) However, Mr. Mendez does not know why specific charges are reduced and he would not handle any disputes about reduced charges—"that would be between the provider and the – sorry – Auto Injury Solutions." (*Id.* at 53:9-54:12.) As discussed in more detail below, the provider submitting most of the charges related to the 2014 collision has authored a declaration for

this Motion supporting the reasonableness of her charges. (PT Kroopf Decl. ISO Motion.)

**G. Gina Armas Filed a Wage Loss Claim Arising from the 2014 Collision that *Still* Has Not Been Paid Nor Denied, and USAA Falsely Told Her No Claim Was Submitted**

At or around the same time that Gina Armas filed a wage loss claim relating to the 2012 collision, she also filed two related to the 2014 collision. (Exhs. 82 and 83 to Frischer Decl.; Mendez Depo. 79:6-24, 80:22-81:11 Exh. D to Frischer Decl.)) The periods of wage loss were for between April 8, 2015 and July 28, 2015, and April 11, 2016 and August 25, 2016, disclosing on the face of the applications that her work ended in June of each year. (*Id.*)

USAA received these forms on September 22, 2016, and one day later sent them to AIS. (*Id.* at 84:21-85:1.) AIS never provided a response and USAA does not know what AIS did to evaluate the claim. (*Id.* at 85:7-16.) By the time that these claim forms were submitted, Mr. Mendez had previously closed the claim, and therefore no 30 day status letters were sent to remind the insureds of the outstanding claim. (*Id.* at 86:19-88:9.) USAA did not re-open the claim when Gina Armas submitted the wage loss forms. (*Id.* at 88:10-13.) When an adjuster keeps a claim closed, it also means that the adjuster does not follow up on the claim. (Vidaurri Depo. 71:16-72:3, Exh. C to Frischer Decl.)

Following up on the claim, counsel for the Armases contacted USAA on June 14, 2017. (Mendez Depo 91:4-18, Exh. D to Frischer Decl.) As of June 14, 2017, USAA had not previously responded to the Armases regarding the September 22, 2016 wage loss claims. (*Id.* at 91:19-21.) USAA followed up counsels' contact with a letter regarding the status of the wage loss claims. (*Id.* at 92:10-22; Exh. 87 to Frischer Decl.) **USAA's letter (Exh. 87) falsely states to counsel for the Armases that no wage loss claim application was ever submitted, which Mr. Mendez admitted in his deposition and recognized that Gina Armas actually submitted one of the forms more than once**. (*Id.* at 93:16-94:4; Exh. 87 to Frischer Decl.) The letter continues its deceptive practice by purportedly enclosing all of the documents Gina Armas submitted, but it omits the wage loss claim forms. (Exh. 87 to Frischer Decl.) Mr. Mendez testified that this letter sent by USAA was factually incorrect. (Mendez Depo. 134:5-22, Exh. D to Frischer Decl.)

**H. Over the Last Two Years the Armases Repeatedly Advise USAA and its Counsel that**

LAMB & FRISCHER LAW FIRM, LLP
1388 Sutter St., Ste. 815
San Francisco, CA 94109
TEL: (415) 997-9529
FAX: (415) 997-9272

LAMB & FRISCHER LAW FIRM, LLP
1388 Sutter St., Ste. 815
San Francisco, CA 94109
TEL: (415) 997-9529
FAX: (415) 997-9272

**USAA Already Possesses Information to Pay MedPay and Extended Benefits Claims**

The crux of this case is that USAA refuses to consider information in its possession that relates the Armases medical payments claims and wage loss claims to the 2012 and 2014 collisions. Attorneys for the Armases have advised USAA of this numerous times, yet USAA takes no action.

On May 1, 2017, counsel for the Armases advised USAA's attorney Michael Jones, who advised Gene Pierce, USAA's claims handling in regards to extended benefits (among other items) will lead to a bad faith lawsuit. (Pierce Depo. 139:3-8, Exh. B to Frischer Decl.; Exh. 62 to Frischer Decl. at ARMAS_LR31_LIT_027-28.) In the e-mail, counsel for the Armases put USAA on notice that Dr. Eichbaum's deposition testimony regarding the reasonableness of Gina Armas's medical treatment and time off from work also applies to the other first party claims. (*Id.*)

Gene Pierce, who received the forwarded e-mail, does not recall if he forwarded this e-mail to anyone in charge of the medical payments and wage loss claims, though he did not provide any substantive information about depositions or medical records to other adjusters. (Pierce Depo 141:18-143:16, Exh. B to Frischer Decl.) Likewise, Mr. Pierce did not advise any adjusters in charge of med pay or wage loss of the positions taken by USAA to "blame" the 2014 collision for any of the damages. (*Id.* at 143:17-144:19.) He knew that the other adjusters did not have access to testimony obtained by USAA or Dr. Eichbaum's opinions. (*Id.* at 144:4-14.)

On August 7, 2017, counsel for the Armases sent a letter regarding this expected bad faith lawsuit, which explained how USAA was refusing to consider information in its possession related to medical payment and wage loss claims. (Exh. 49 to Frischer Decl.) The letter was directed to USAA's Senior VP of Claims and Executive Director of Claims Operations. (*Id.*) Relevant here, the letter advises again of the relation between evidence of the various claims. (*Id.* at ARMAS_LR31_CF_1155.) USAA's VP and Executive Director were also put on notice that Gina has not received a response from USAA yet regarding her wage loss claims submitted in 2016. (*Id.*)

USAA responded on August 23, 2017. (Exh. 48 to Frischer Decl.; Vidaurri Depo. 129:19-130:25.) USAA advised counsel for the Armases that no wage loss forms were submitted for claim number -031 (the 2012 collision). (*Id.*) In regards to claim number -035 (the 2014 collision), USAA advised the claims submitted did not have notes written by medical providers related to the collision. (Exh. 48 to Frischer Decl.) USAA did not provide this letter to any medical payment adjusters or wage

LAMB & FRISCHER LAW FIRM, LLP
1388 Sutter St., Ste. 815
San Francisco, CA 94109
TEL: (415) 997-9529
FAX: (415) 997-9272

loss adjusters for further investigation. (Vidaurri Depo. 144:3-11, Exh. C to Frischer Decl.) As USAA clarified in deposition, Exh. 48 is not a claim denial letter. (Mendez Depo. 151:21-152:4, Exh. XX to Frischer Decl.) **Additionally, USAA confirmed this August 23, 2017 letter was the first time anyone had advised the Armases that USAA did not believe the wage claims arising from the 2014 collision related to the 2014 collision.** (*Id.* at 152:10-17.) Of course, this response misses the point of the Armases letter: that USAA already had evidence linking the wage loss to injury.

### I. USAA Testified that they Consider Medical Payment and Extended Benefit Claims Separately from UIM Claims

As of USAA's corporate representative deposition on April 5, 2019, he did not know that, for example, USAA's UIM adjuster sought to "blame" any the 2014 collision for damages occurring after July 2014. (Mendez Depo 119:5-22, Exh. D to Frischer Decl.) When asked whether USAA obtained information that related Gina Armas's wage loss claim to the July 2014 collision, the corporate representative stated: "So the only -- the only information when it comes to wage form would be for after -- the -- the three ones that you provided to me are for after the dates of loss of Loss Report 35. And in order to obtain any information from Loss Report 31 [2012 collision] to Loss Report 35 [2014 collision], I don't know." (*Id.* at 129:7-19.) Prior to his deposition of April 5, 2019, he did not know about any testimony that was obtained in the UIM matter. (*Id.* at 130:9-13.) As of April 5, 2019, he was unaware of any ongoing effort by USAA regarding the claims. (*Id.* at 133:1-19.)

The corporate representative for the claims arising from the 2012 collision testified similarly; when asked if USAA is concerned with being consistent between medpay claims and other claims, or other losses, she testified: "…because the med pay and the UIM, they're separate, so there's two separate adjusters. So the way we evaluate our claim is based off of what's being submitted to us." (Vidaurri Depo 135:6-24, Exh. C to Frischer Decl.) She was never made aware of the positions taken in the UIM claim. (*Id.* at 136:8-12.) USAA's corporate representative for the medpay and wage loss claims made following the 2012 collision testified that she does not know who Dr. Eichbaum is and did not know of the determinations of causation made by Dr. Satow. (*Id.* at 136:13-137:10.)

USAA may claim in its Reply memorandum that a medical release would be required for the medical payment adjusters to look into a UIM file. First, if this is true, USAA is unaware if they ever

LAMB & FRISCHER LAW FIRM, LLP
1388 Sutter St., Ste. 815
San Francisco, CA 94109
TEL: (415) 997-9529
FAX: (415) 997-9272

told the Armases that such a medical release this was necessary. (*Id.* at 140:18-141:12.) Second, as demonstrated during depositions, the medpay and wage loss adjusters did have access to the UIM summaries, which contained the UIM adjuster's review of evidence and conclusions, as cited above. (Mendez Depo 116:16-118:16.) USAA's medpay and wage loss adjuster for 2014 in the course of his claim handling in fact reviewed the claims summaries written by Gene Pierce and marked as Exh. 31. (*Ibid.*) The lack of communication between different adjusters handling the same loss appears not to be a bug in USAA's system, but instead it appears to be an intentional feature.

## III. LEGAL ARGUMENT

### A. Defendant USAA's Burden on Summary Judgment

"A moving party without the ultimate burden of persuasion at trial-usually, but not always, a defendant-has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. [Citations omitted] In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. [Citations omitted] In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact. See id." (*Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).) "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial. [Citations omitted] In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything." (*Id.* at 1102-03.)

The burden can be met one of two ways: USAA could offer evidence negating essential elements of Plaintiffs' claim, or USAA can offer evidence demonstrating the moving party does not have evidence to support its claim. (*Id.* at 1105-06.) Quite simply, USAA has failed to meet its initial burden of production, as USAA has neither negated facts Plaintiffs must prove or shown in any convincing manner that Plaintiffs do not have evidence to support their claims. USAA has not made clear which route of proof it is taking. Nonetheless, it certainly has not negated Plaintiffs' claim because, as discussed thoroughly in the Evidentiary Objections section, nearly all of USAA's

LAMB & FRISCHER LAW FIRM, LLP
1388 Sutter St., Ste. 815
San Francisco, CA 94109
TEL: (415) 997-9529
FAX: (415) 997-9272

supporting evidence is in the form of unsworn expert opinions by medical reviewers for whom USAA's declarants have testified they do not know the qualifications.

USAA has not demonstrated either that Plaintiffs cannot prove their case. The Ninth Circuit notes that this is not the same as discovery – "a moving party may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence." (*Nissan Fire & Marine Ins. Co* at 1105.) Usually by the point of summary judgment, the moving party would know whether the responding party has evidence. (*Id.*) This is what makes USAA's motion surprising: **this opposition is mostly based on evidence provided by USAA, which USAA presumably recognizes creates a triable issue of material fact.**

### B. The Majority of Evidence Submitted by USAA Is Inadmissible and Should Be Stricken

Defendant's motion must be denied because Defendant's contentions are based on inadmissible evidence; Plaintiff's objection follows. USAA's declarations claiming to authenticate AIS reports lack foundation and are not based on personal knowledge. Without the declarations of Mendez and Viduarri and the attached AIS reports, Defendant is unable to negate Plaintiff's claims.

"Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." (FRCP 56(c)(4).)

"A declarant must provide evidence to establish that he has personal knowledge of the facts stated. Fed.R.Civ.P. 56(e)(requiring declaration to "show affirmatively that the affiant is competent to testify on the matters therein"); Fed.R.Evid. 602. Thus, a court may strike any affidavit that is not based on personal knowledge. Akin, 959 F.2d at 530; CMS Indus., Inc. v. L.P.S. Int'l, Ltd., 643 F.2d 289, 295 (5th Cir.1981)." (*Bright v. Ashcroft*, 259 F. Supp. 2d 494, 498 (E.D. La. 2003).)

| Mendez Declaration | Contradictory Mendez Testimony |
|---|---|
| Pursuant to the terms of the subject Policy, Plaintiffs' medical documentation was *appropriately reviewed by independent licensed medical experts* who prepared written reports which outlined their opinions. Here, *Drs. Chen and Boguslavsky, who reviewed* Gina Armas' physical therapy treatment, are both Doctors of Medicine. (*Emphaiss added.*) *Mendez* decl. ¶8. | Mendez admits he does not know who wrote the reports. (Mendez Depo 97:10-14.)<br><br>Mendez does not know the qualifications of the either Chen or Boguslavsky, or whether they are even doctors (Mendez Depo 104:6-14; 112:4-8; 112:17-113:13.) |

LAMB & FRISCHER LAW FIRM, LLP
1388 Sutter St., Ste. 815
San Francisco, CA 94109
TEL: (415) 997-9529
FAX: (415) 997-9272

| | |
|---|---|
| | USAA does not keep qualifications on PHAD reviewers for adjusters to review and Mendez never looked into the qualifications of the doctors (Mendez Depo 107:2-9; 112:17-113:13.) |
| All of Plaintiff's medical treatment invoices were appropriately analyzed and handled in accordance with the terms of the Med-Pay provision contained within the Policy. *I relied, in part, on the documents in Plaintiffs' claim file, medical file and recommendations from the physician reviewers, Timothy Chen, MD and David Boguslavsky, MD, in determining the reasonableness, necessity and relation of the claimed care and bills in providing Plaintiffs' Med-Pay benefits*. (*Emphaiss added*.) *Mendez* decl. ¶7. | Mendez did not review the medical file or treatment guidelines to determine the reasonable, necessity, or relation of the charges in the claim and relied **solely** on AIS in making decision about whether treatment was reasonable or related. (Mendez depo at 116:6-9; 114:15-115:3.) |
| **Viduarri Declaration** | **Contradictory Viduarri Testimony** |
| Pursuant to the terms of the subject Policy, Plaintiffs' medical documentation was *appropriately reviewed by independent licensed medical experts who prepared written reports* which outlined their opinions. Here, Mark Albright, who reviewed David Armas' chiropractic treatment is a Doctor of Chiropractic. David Chen, who reviewed Gina Armas' chiropractic treatment is a Doctor of Medicine. Finally, George Sage, who also reviewed Gina Armas' chiropractic treatment is a Doctor of Chiropractic. (*Emphasis added*) (*Viduarri* Decl. ¶11.) | Viduarri admits he does not know how the reports are prepared. (Viduarri Depo 66:13-16.)<br><br>Viduarri does not know the qualifications of the either Chen or Boguslavsky, or whether they are even doctors (Viduarri Depo 81:19-82:23; 83:21-84:9.)<br><br>USAA does not keep qualifications on PHAD reviewers for adjusters to review and Viduarri never looked into the qualifications of the doctors (Viduarri Depo 81:19-82:23; 83:21-84:9.) |
| The reasons why some of the Plaintiffs' medical bills were not considered for payment were **based upon these expert's opinion and grounded in established medical literature** which contained objective guidelines. The reasons for non-payment were explained within the reports which included the titles of the applicable medical literature supporting the independent experts' opinions. (*Emphasis added*) (*Viduarri* Decl. ¶12.) | Viduarri does not know what guidelines or materials the authors of reports relied upon. (Viduarri Depo 84:25-85:19; 86:9-23.)<br><br>Viduarri never looked at the guidelines used to make these decisions. (Viduarri Depo 87:3-5.)<br><br>Viduarri does not know the qualifications of the either Chen or Boguslavsky, or whether they are even doctors (Viduarri Depo 81:19-82:23; 83:21-84:9.) |

LAMB & FRISCHER LAW FIRM, LLP
1388 Sutter St., Ste. 815
San Francisco, CA 94109
TEL: (415) 997-9529
FAX: (415) 997-9272

Additionally, the AIS reviewer reports should be excluded from evidence because there is no admissible evidence submitted providing that the AIS reviewers are experts, as required by FRE 702. At best, any information that the AIS reviewers are medical professionals is hearsay. (FRE 801.)

### C. USAA Breached the Insurance Contract by Failing to Pay Claims with Supporting Evidence

"The law implies in every contract, including insurance policies, a covenant of good faith and fair dealing. "The implied promise requires each contracting party to refrain from doing anything to injure the right of the other to receive the agreement's benefits. To fulfill its implied obligation, an insurer must give at least as much consideration to the interests of the insured as it gives to its own interests. When the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort." (*Frommoethelydo v. Fire Ins. Exchange* (1986) 42 Cal.3d 208, 214–215, 228 Cal.Rptr. 160, 721 P.2d 41.) (*Wilson v. 21st Century Ins. Co*., 42 Cal. 4th 713, 720 (2007), as modified (Dec. 19, 2007).)

#### *1. USAA Breached the Insurance Contract as to Gina and David Armas's MedPay Claims Arising from Both 2012 and 2014 Collisions*

There are a number of unpaid medical payments claims for both Gina Armas and David Armas arising out of the 2012 and 2014 collisions. (See Medpay Logs Exhs. 47, 89, and 90.) USAA both denied claims, which it purports to support with inadmissible evidence in its Motion, as well as under-paid claims, which it conveniently ignores for the purposes of this Motion. Reviewing Exhs. 47, 89, and 90, it can be seen that USAA routinely would not pay the medical providers' billed amounts.

USAA actually had evidence in its possession that warranted paying the medpay claims: the opinions of Dr. Eichbaum. USAA's own retained expert, Dr. Eichbaum, reviewed the same treatments and medical records that were sent to AIS in relation to Gina Armas's claims.

Dr. Eichbaum testified on behalf of USAA. **When asked whether he believed any of the medical treatment that he reviewed (listed above) was unnecessary, he ultimately testified "no."** (Dr. Eichbaum Depo. at 14:16-21, Exh. E to Frischer Decl.) To be sure, Dr. Eichbaum's opinion should have far greater weight than any of the inadmissible AIS opinions submitted by USAA: first, Dr. Eichbaum's testimony is testimony of an expert who has himself testified as to his credentials, and thus an admissible opinion. Second, he actually had an examination of Gina Armas, whereas the AIS

LAMB & FRISCHER LAW FIRM, LLP
1388 Sutter St., Ste. 815
San Francisco, CA 94109
TEL: (415) 997-9529
FAX: (415) 997-9272

reviewers did not. Third, his foundation for his opinions is based off of a far greater review of records and holistic approach. Yet, USAA to this day has refused to consider Dr. Eichbaum's opinions in relation to the medical payments claims.

Additionally, USAA determined, and relied upon its position in the related UIM matter, that "all special damages, including those for the cervical surgery, neck physical therapy, and physical therapy for the shoulder incurred after July 30, 2014, and lost earnings, is solely the responsibility of the subsequent [2014] accident." (Pierce Depo. 117:9-118:21, Exh. B to Frischer Decl.) Specifically, nearly all of the claims denied in relation to Gina Armas and the 2014 collision are physical therapy claims. (Exh. 89 to Frischer Decl.) If the foregoing is not enough evidence of relatedness and reasonableness of the charges, Bay Physical Therapy's proprietor Shelley Kroopf, PT submitted a declaration for this Motion. In it, she supports the reasonableness of treatment that she provided *both* David Armas and Gina Armas. (See Kroopf Decl.)

USAA further breached the medical payments contract by unreasonably paying less than billed by providers. This is not an issue that USAA has addressed in their motion, yet Plaintiffs respond to this issue regardless. At least as far as Bay Physical Therapy's charges, PT Kroopf submits a declaration substantiating the reasonableness of her charges. (See Kroopf Decl.) USAA submitted no evidence as to the arbitrarily lowered payments in its Motion, and if it does in Reply papers, then it has only demonstrated a triable issue of fact.

### *2. USAA Breached the Insurance Contract by Completely Ignoring Gina Armas's Wage Loss Claims*

To date, USAA has neither accepted nor denied the wage loss claims made in September 2016. Gina submitted a total of three wage loss claims, one following each shoulder surgery in 2014 and 2015, and one following her neck surgery in 2016. As discussed thoroughly in the factual section, above, shoulder surgeon Dr. Satow's testimony to USAA related the 2014 surgery to the 2012 collision and the 2015 surgery to the 2014 collision, as well as testifying the time he took Gina Armas off work related to his treatment of her. Dr. Eichbaum testified that the time off following neck surgery in 2016 was reasonable and related to the neck surgery.

The law requires an insurer to either accept or deny a claim within 40 calendar days of the

LAMB & FRISCHER LAW FIRM, LLP
1388 Sutter St., Ste. 815
San Francisco, CA 94109
TEL: (415) 997-9529
FAX: (415) 997-9272

claim being made. (10 CCR § 2695.7(b).) If the insurer needs more time, the insurer must provide a written notice with the need for more time, and shall follow up every 30 days until a determination on the claim is made or legal action is served. (10 CCR § 2695.7(c)(1).) This was not done. It has been *years* since Gina Armas submitted her claim and it has not been accepted nor denied. Furthermore, the thirty-day notices were never provided because USAA refused to re-open Gina Armas's claims. (Mendez Depo. 86:19-88:9.) This is simply a breach.

***3. USAA Breached the Insurance Contract to Gina Armas by Failing to Pay Undisputed Amounts Due, as Well As Failing to Reasonably Investigate Her Injuries***

USAA is plain wrong when it represents to this Court that there can be no breach of the insurance agreement when UIM benefits are paid in full. (Cf. *Wilson* at 720.) California law implies into every contract, including insurance policies, a covenant of good faith and fair dealing. (*Id.*) In *Wilson,* the Plaintiff sued her insurance carrier when it unreasonably denied resolving a UIM matter and insisted on arbitration before changing its mind and paying the policy limit. (*Id.* at 719.) Even though the carrier had paid the UIM policy limit, the insurance carrier's motion for summary judgment was denied on the basis that the insurer did not conduct a thorough and fair investigation. (*Id.* at 721 et seq.) Here, USAA's breach of the contract and breach of the covenant of good faith and fair dealing is the same. In the interest of efficiency, this will be addressed in the bad faith section.

***4. David Armas's UIM Claim is Not at Issue.***

The issue of David Armas's UIM Claim is not at issue.

**D. USAA Breached Its Duty of Good Faith and Fair Dealing by Refusing to Respond to Insurance Claims Over the Course of Years and Refusing to Consider Supporting Evidence In Its Possession**

As the Ninth Circuit has held: "The key to a bad faith claim is whether or not the insurer's denial of coverage was reasonable.' [Citations omitted] '**[T]he reasonableness of an insurer's claims-handling conduct is ordinarily a question of fact**.'" (*Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1161 (9th Cir. 2002) (emphasis added.)) "). Reflecting the importance of insurers' good faith obligations, bad faith by an insurer is subject to tort remedies, including punitive damages." (*Id.*)

"**[D]enial of a claim on a basis unfounded in the facts known to the insurer, or contradicted by those facts, may be deemed unreasonable.**" (*Wilson v. 21st Century Ins. Co.*, 42

LAMB & FRISCHER LAW FIRM, LLP
1388 Sutter St., Ste. 815
San Francisco, CA 94109
TEL: (415) 997-9529
FAX: (415) 997-9272

Cal.4th 713, 721 (2007) (emphasis added).) **Critical to this current dispute – "A trier of fact may find that an insurer acted unreasonably if the insurer ignores evidence available to it which supports the claim. The insurer may not just focus on those facts which justify denial of the claim. If an insurer unreasonably refuses a claim, it is liable for breach of the covenant of good faith and fair dealing inherent in every insurance policy."** (*Mariscal v. Old Republic Life Ins. Co*., 42 Cal. App. 4th 1617, 1623 (1996), mod. (Mar. 28, 1996), mod. (Mar. 29, 1996).) **"An insurance company may not ignore evidence which supports coverage. If it does so, it acts unreasonably towards its insured and breaches the covenant of good faith and fair dealing."** (*Id.* at 1624.) In addition to an insurer having to consider all evidence in its possession, **"No insurer shall require a first party claimant or beneficiary to submit duplicate proofs of claim where coverage may exist under more than one policy issued by that insurer."** (10 CCR § 2695.4(g).)

The "genuine issue rule" or "genuine dispute rule" only can be decided on summary judgment "when it is undisputed or indisputable that the basis for the insurer's denial of benefits was reasonable—for example, where even under the plaintiff's version of the facts there is a genuine issue as to the insurer's liability under California law." (*Amadeo*, 290 F.3d at 1161.)

As discussed above, USAA had constantly ignored evidence not only available to it, but also in its possession in the form of its own retained expert opinions, testimony of treating providers, and medical records. Despite being advised numerous times that its own expert opinions, testimony of treating providers, and adjuster opinions (from the UIM matter) supported paying the denied medpay claims and ignored wage loss claims, USAA has taken no action to accept the claims or even look in its other files. <u>In fact, even after being advised numerous times that USAA has simply ignored the wage loss claim, USAA still hasn't taken any action to accept or deny the claim.</u>

Plaintiffs' insurance adjusting expert Harvey Maxey opined that bad faith exists in this matter, citing to the facts that insurance companies must consider all information and evidence in their possession from any source, yet USAA constantly refused to consider evidence obtained by other adjusters working for USAA. (Maxey Decl. at ¶ 7.) Moreover, an insurance company acts in bad faith if it takes inconsistent positions between two different losses to result in a denial of coverage. (*Id.* at ¶ 9.) Even USAA's process of mostly or completely relying on AIS, whose reviewers' qualifications

LAMB & FRISCHER LAW FIRM, LLP
1388 Sutter St., Ste. 815
San Francisco, CA 94109
TEL: (415) 997-9529
FAX: (415) 997-9272

are completely unknown to the adjusters responsible on the claims, is bad faith. (*Id.* at ¶ 11.) As discussed above, not only do the adjusters not know what the reviewers qualifications are or their specialties, but Carlos Mendez even testified he does not know if the reviews are written by actual doctors. AIS did not once support payment of claims for the Armases. After reviewing USAA's corporate representative depositions, Mr. Maxey concluded that "AIS was used as a mechanism to deny claims, rather than fairly investigate claims." (*Id.* at ¶ 11.) And, of course, Mr. Maxey agrees that the delay of years to decide the wage loss claims is bad faith when an insurance company only has 40 days under usual circumstances. (*Id.* at ¶ 13.)

In regard to the UIM matter, USAA did not pay the amount of the claim that it found to be undisputed. USAA believed that Gina Armas's claim was worth $150,000.00 (as opposed to merely offering $150,000.00 as a compromise), but instead required Gina Armas to resolve her claim completely to obtain this amount. To be sure, "in California, an insurer has the same duty to act in good faith in the uninsured motorist context as it does in any other insurance context." (*Maslo v. Ameriprise Auto & Home Ins*. (2014) 227 Cal.App.4th 626, 636, as modified (July 22, 2014).) And, USAA cannot require the waiving of further claims in the UIM context: "An insured entitled to recovery under the uninsured motorist endorsement or coverage shall be reimbursed within the conditions stated herein without being required to sign any release or waiver of rights to which he or she may be entitled under any other insurance coverage applicable…" (Ins. Code § 11580.2(h).)

Finally, USAA engaged in bad faith as to the UIM matter when it consistently had reason to doubt Dr. Eichbaum's initial opinions. Dr. Eichbaum repeatedly categorized Gina Armas's neck pain as transient and based his opinions on that finding. However, Gene Pierce summarized the neck pain as daily and worsening (Exh. 30) and ultimately Dr. Eichbaum admitted under oath there was no evidence supporting transient neck pain. USAA simply was engaging in the practice of only attempting to find evidence supporting a denial. Once USAA was notified of Dr. Eichbaum's change of opinion (which was earlier than USAA discloses to this Court), it took approximately two weeks for USAA to agree to pay the claim, and it did so only two days before arbitration. As every attorney understands, during this time in the two weeks before arbitration, litigation costs were increasing daily.

**E. USAA's Conduct Is Subject to Punitive Damages as It Was Ratified by the Senior Vice**

**President and Executive Director of Claims**

Plaintiff's letter advising USAA of a soon-to-be filed bad faith claim was directed to a Senior Vice President and an Executive Director of Claims. In the letter, Plaintiffs advised USAA's executives of the practices described above. (See Exh. 49 to Frischer Decl.) Still, to this date, USAA has not responded to accept or deny Plaintiff's wage loss claim made years ago. Still, to this date, USAA has refused to consider the fact that in the 2012 UIM matter it "blamed" the 2014 collision for all special damages arising after the 2014 collision, yet denied medpay claims and refused to respond to wage loss claims concerning those very same damages.

Punitive damages may be awarded if a jury finds oppression, fraud, or malice. (Cal. Civil Code § 3294.) "Malice" is defined in part as despicable conduct carried on with a willful and conscious disregard of the rights of others. (*Id.*) "Oppression" is defined in part as cruel and unjust hardship in conscious disregard of a person's rights. (*Id.*) And, "Fraud" is an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with an intention to deprive a person of property. (*Id.*) Here, all three are present. USAA has exhibited malice and oppression in that Plaintiffs have advised USAA many times that it is ignoring evidence in its possession, yet no further investigation into such evidence has been taken – this is a conscious disregard.

USAA has engaged in fraud as well. First, USAA advised the Armases that there is a one year statute of limitations, and then it appears no further action (not even a claim denial letter) was sent. Second, upon following up, USAA stated numerous times that no wage loss claims were filed when they were. USAA even ***removed pages*** from the documents submitted by Gina Armas to make her attorney believe no wage loss claim form was filed. Notably, USAA's Motion still fails to acknowledge that Gina Armas actually made wage loss claims for both 2012 and 2014 collisions, as admitted by USAA in deposition, and instead refers to an "alleged wage loss claim".

**IV. CONCLUSION**

In conclusion, there is no support for Defendants' Motion for Summary Judgment. Defendant has not even met its burden as a moving party. Even if it did meet its burden, triable issues of fact exist.

LAMB & FRISCHER LAW FIRM, LLP
1388 Sutter St., Ste. 815
San Francisco, CA 94109
TEL: (415) 997-9529
FAX: (415) 997-9272

Dated: April 15, 2019

**LAMB & FRISCHER LAW FIRM, LLP**

BY: _____/s/______________________

Bryan D. Lamb
Richard L. Frischer
Attorneys for Plaintiff

LAMB & FRISCHER LAW FIRM, LLP
1388 Sutter St., Ste. 815
San Francisco, CA 94109
TEL: (415) 997-9529
FAX: (415) 997-9272