ROBERT S. McLAY (SBN 176661)
RSM@dkmlawgroup.com
JOSHUA N. KASTAN (SBN 284767)
JNK@dkmlawgroup.com
ANASTASIA M. LOLONG (SBN 298102)
AML@dkmlawgroup.com
ALEXANDRIA GASPER (SBN 309606)
AXG@dkmlawgroup.com
**DKM LAW GROUP, LLP**
535 Pacific Avenue, Suite 101
San Francisco, California 94133
Telephone: (415) 421-1100
Facsimile: (833) 790-5202

Attorneys for Defendant
USAA CASUALTY INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

GINA ARMAS and DAVID ARMAS,

Plaintiffs,

vs.

USAA CASUALTY INSURANCE COMPANY; and DOES 1-100.

Defendant.

Case No. 5:17-cv-06909-EJD

**DEFENDANT USAA CASUALTY INSURANCE COMPANY'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

Date: May 9, 2019
Time: 9:00 a.m.
Crtrm: 4
Judge: Hon. Edward J. Davila

**TABLE OF CONTENTS**


**I. INTRODUCTION ... 4**

**II. THE DECLARATIONS OF VIDAURRI AND MENDEZ ARE BASED ON PERSONAL KNOWLEDGE AND THEREFORE ADMISSIBLE ... 6**

**III. THE DECLARATION OF HARVEY MAXEY SHOULD BE STRICKEN AS IT FAILS TO COMPLY WITH LR 7-5 AND FRE 704 ... 7**

A. MAXEY'S DECLARATION CONTAINS ARGUMENTATIVE ASSERTIONS AND SPECULATION ... 7
B. MAXEY'S DECLARATION CONTAINS IMPROPER CONCLUSIONS OF LAW ... 8

**IV. THE ARMASES CANNOT POINT TO ANY CONTRACTUAL OBLIGATION THAT EXISTED OR WAS BREACHED IN THE HANDLING OF THEIR MED-PAY CLAIMS ... 9**

A. PLAINTIFFS' FAILED TO PROVIDE ANY EVIDENCE DISPUTING THAT THE TERMS OF THE POLICY EXPRESSLY ALLOWED FOR PLAINTIFFS' MEDICAL RECORDS AND INVOICES TO BE REVIEWED BY AN INDEPENDENT THIRD PARTY ... 10
B. THE MED-PAY ADJUSTERS APPROPRIATELY RELIED UPON THE MEDICAL EXPERTS TO PROVIDE OPINIONS REGARDING THE NECESSITY AND APPROPRIATENESS OF PLAINTIFFS' MEDICAL TREATMENT ... 10
C. THE MED-PAY ADJUSTERS HAVE FINAL DECISION OVER THE PAYMENT OF BENEFITS ... 11
D. THE MED-PAY CLAIMS AND UIM CLAIMS WERE APPROPRIATELY KEPT SEPARATE ... 12

**V. THERE CAN BE NO BREACH OF CONTRACT AS TO GINA ARMAS' WAGE LOSS CLAIM AS IT WAS NEVER BROUGHT WITHIN THE SCOPE OF COVERAGE ... 13**

**VI. THERE CAN BE NO BREACH OF CONTRACT AS TO GINA ARMAS' UIM CLAIM AS THE POLICY LIMITS WERE EXHAUSTED ... 14**

**VII. THERE CAN BE NO BAD FAITH WHEN THE ARMASES CANNOT DEMONSTRATE A BREACH OF THE INSURANCE CONTRACT ... 15**

**VIII. THERE IS NO EVIDENCE OF FRAUD, OPPRESSION OR MALICE ... 15**

A. THERE IS NO EVIDENCE OF FRAUD, OPPRESSION, OR MALICE, LET ALONE CLEAR AND CONVINCING EVIDENCE ... 15

**IX. CONCLUSION ... 16**

**CASES**

*Basich v. Allstate*, 87 Cal.App.4th 1112, 1122 (2001) ........................................................16, 17

*Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) ........................8

*Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993)............................................................8

*Love v. Fire Ins. Exchange*, 221 Cal.App.3d 1136, 1151 (1990) .........................................15, 16

*Minich v. Allstate Ins. Co.*, 193 Cal.App.4th 477, 493 (2011) ..........................................9, 15, 16

*Nationwide Transp. Fin. V. Cass Info Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) .................8

*Wilson v. 21st Century Ins. Co.*, 42 Cal.4th 713 (2007)..............................................................15

**RULES**

Fed. R. Civ. P. 56(e)....................................................................................................................8

FRE 704.............................................................................................................................5, 7, 8

Local Rule 7-5 ................................................................................................................5, 7, 8, 9

## I.
## INTRODUCTION

With the instant motion, Defendant USAA Casualty Insurance Company ("USAA CIC") has properly submitted undisputed facts and supporting evidence that demonstrate that: 1) USAA CIC complied with its contractual obligations; 2) USAA CIC did not act unreasonably nor improperly withhold policy benefits; and 3) USAA CIC did not engage in conduct that amounts to fraud oppression or malice, much less to the requisite evidentiary standard of clear and convincing evidence.

Significantly, in their Opposition Plaintiffs David and Gina Armas ("Plaintiffs" or "the Armases") do not point to any provision of the subject automobile insurance policy that has been breached. Instead, Plaintiffs' Opposition largely consists of a lengthy recitation of facts and little to no legal argument in response to USAA CIC's defense of the breach of contract claim alleged against it. In fact, in response to USAA CIC's argument that it has not breached any aspect of the actual subject policy, the Armases are silent and have limited their legal argument solely on arguments related to discussion of breaches of the implied covenant – not of the contract.

Such an omission by the Armases is fatal as in the absence of a breach of the insurance policy, there can be no breach of the implied covenant. Therefore, without evidence that USAA CIC has in fact breached the insurance contract, their breach of the implied covenant claim cannot lie.

Specifically, the Armases have simply failed to address how any of USAA CIC's conduct in the handling of the Med-Pay, wage earner and UIM claims breached the terms of the subject insurance contract.

<u>As to the Med-Pay claim</u>, despite discussing at length the alleged inappropriateness of USAA CIC's reliance on independent third-party reviewer, AIS, Plaintiffs' fail to address of acknowledge that the express terms of the Policy allow USAA CIC to rely on the opinions of the AIS reviewing doctors in determining the reasonableness and medical necessity of Plaintiffs' treatment and invoices in relation to receipt of Med-Pay benefits. Moreover, Plaintiffs also fail to understand that although certain medical information may have been received as part of the UIM claim, such information is

necessarily kept separate from the Med-Pay handling aspect, therefore, unless specifically authorized by Plaintiffs to be shared outside of the UIM claim handling or submitted separately by Plaintiffs to the Med-Pay adjuster, information received in the UIM arbitration would not be accessible by the Med-Pay adjusters.

As to the wage earner claim, despite reiterating that a wage earner application was submitted, Plaintiffs' own exhibit purporting to be a copy of Gina Armas' submitted wage earner application fails to connect her disability to either the 2012 or 2014 loss. Without any documentation linking Gina Armas' claimed time out of work to either the 2012 or 2014 loss, this prevented the claim from failing within the scope of coverage and is therefore not indicative of a breach of the insurance policy.

As to the UIM claim, the Armases have presented no evidence or argument refuting USAA CIC's assertion that there can be no breach of the insurance contract when USAA CIC paid Gina Armas the UIM policy limits. Instead, the Armases have simply relied on the somewhat misplaced argument that a breach of the implied covenant could constitute a breach of the insurance contract as to the UIM claim.

As to the punitive damages claim, the Armases have simply fallen far short of meeting the clear and convincing standard of evidence as their purported evidence is not only unsubstantiated but certainly does not amount to malice, fraud or oppression.

In addition, the Armases have objected to the Declarations of Med-Pay adjusters Mina Vidaurri and Carlos Mendez based on the faulty claim that the contents are not based on personal knowledge. However, both Vidaurri's declarations are not contradicted by their deposition testimony – as they each reviewed the reports of the reviewing doctors and relied on such reports in the handling of Plaintiffs' Med-Pay claims, as expressly allowed under the Policy.

Finally, the Armases have also attempted to submit a declaration authored by their previously undisclosed insurance adjuster expert consisting almost entirely of legal opinions and statements without any supporting evidence or authority. As the declaration is violative of Local Rule 7-5 and FRE 704, USAA CIC respectfully requests the Court strike the Declaration of Harvey Maxey.

Accordingly, USAA CIC respectfully requests the Court grant its Motion for Summary Judgment or, in the alternative, Partial Summary Judgment.

## II.
## THE DECLARATIONS OF VIDAURRI AND MENDEZ ARE BASED ON PERSONAL KNOWLEDGE AND THEREFORE ADMISSIBLE

The Armases' claim that the Declaration of Mina Vidaurri and Carlos Mendez should be stricken for failing to be based on personal knowledge is without merit.

First, Mendez's testimony does not contradict his declaration based on the language of the policy permitting a Med-Pay adjuster to rely on the reviewing medical expert opinion. As discussed in greater detail below, and as to paragraph 8 of Mendez's declaration, as the subject insurance contract expressly allows a third-party to review bills for reasonableness, necessity, and relation to a loss, Med-Pay adjusters Vidaurri and Mendez relied on the medical expertise of the AIS reviewers. (The Policy at ARMAS_CP_034-035.) This would include a reliance that obviated the need to review the qualifications of each medical expert when such review would reasonably be handled by independent third party, AIS.

Moreover, as the express terms of the Policy permitted Vidaurri and Mendez to rely on such medical expert opinions in handling Plaintiffs' Med-Pay claims, it was not necessary for the adjuster to contact or question the reviewing doctors, especially in the absence of any request from Plaintiffs for information pertaining to the qualifications of the reviewing doctors. (Deposition of Carlos Mendez ["Mendez Depo."] at 105:16-106:11, **Exhibit 31** to the Declaration of Anastasia Lolong ["Lolong Decl."].) Similarly, neither is paragraph 7 contradicted by Mendez's deposition testimony as Mendez, indeed "relied, in part" on the stated documents in providing Plaintiffs with Med-Pay benefits. Therefore, Mendez's declaration is not contradicted by his deposition testimony and Plaintiffs claim.

Vidaurri's declaration is also based on personal knowledge for the same reasons discussed above – the Policy expressly allowed the Med-Pay adjusters to rely on the reviewing medical experts' reports and Vidaurri indeed relied on the medical experts who prepared written reports. Again, Vidaurri's and Mendez's reliance on the Med-Pay experts, as dictated by the Policy, would have obviated the need for them to verify and review the qualifications of each medical expert. Thus, paragraph 11 of Vidaurri's declaration is not negated by her testimony.

Neither is paragraph 12 of Vidaurri's declaration negated by her testimony. The written

reports of the reviewing doctors speaking for themselves in that in reviewing such reports Vidaurri has personal knowledge that the reports contained citations to medical literature, that reasons for non-payment were explained within each report and that each report contained titles of medical literature supporting the experts' opinions.

Therefore, Plaintiffs' claim that Vidaurri and Mendez's declarations are not supported by personal knowledge is simply unfounded based on even the most cursory reading of each of their declarations.

## III.
## THE DECLARATION OF HARVEY MAXEY SHOULD BE STRICKEN AS IT FAILS TO COMPLY WITH LR 7-5 AND FRE 704

In support of their Opposition, Plaintiffs filed the Declaration of Harvey W. Maxey, Plaintiffs' previously undisclosed insurance adjusting expert. Maxey's declaration is replete with inadmissible conclusions of law and legal opinions. Moreover, the declaration contains unsubstantiated statement and inadmissible hearsay along with musings and observations that are wholly irrelevant to the matters at hand. Accordingly, USAA CIC respectfully requests the Court strike Maxey's declaration as it is in direct violation of Local Rule 7-5(b) and FRE 704.

### A. Maxey's Declaration Contains Argumentative Assertions and Speculation

All of the "facts" contained within Maxey's declaration are completely unsupported by evidence because although Maxey purports to have reviewed various depositions taken in the instant litigation, his declaration fails to attach the documents that it purports to rely on or cite to the relevant portions of the transcript it purports to cite to. All that remains are either (1) speculation not based on personal knowledge and/or wholly irrelevant to the issues in this case; (2) improper argumentative assertions; or (3) impermissible conclusions of law, discussed more specifically in the next section.

First, instead of containing facts based on personal knowledge as required by Local Rule 7-5(b), Maxey's declaration consists entirely of his interpretations and opinions based on his alleged review of three deposition transcripts: Gene Pierce, Mina Vidaurri and Carlos Mendez.

Local Rule 7-5(b) states in pertinent part:

> **(b) Form.** An affidavit or declarations **may contain only facts**, must conform as much as possible to the requirements of Fed. R. Civ. P. 56(e), **and must avoid conclusions and argument**. … An affidavit or

declaration not in compliance with this rule **<u>may be stricken in whole or in part</u>**."

Here, Maxey's entire declaration is an expert report repackaged as a declaration absent any sufficient citations to the deposition transcripts he has reportedly relied on. As will be discussed further in the next section, Maxey's report entirely consists of conclusions and argument in violation of Local Rule 7-5.

Next, many of the "opinions" express in Maxey's declaration are argumentative, conclusory and factually unsupported. "Conclusory allegations unsupported by evidence do not suffice to defeat a properly supported motion for summary judgment." (*Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).) The Maxey declaration contains many argumentative allegations which are improper for an expert declaration in support of summary judgment and must be stricken.

**B. <u>Maxey's Declaration Contains Improper Conclusions of Law</u>**

In further disregard for the local rules and the FRE 704, Maxey's declaration is replete with legal conclusions and interpretations. The 9th Circuit has continually held, "an expert witness cannot give an opinion as to her *legal conclusion,* i.e., an opinion on an ultimate issue of law." (*Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004); *see also Nationwide Transp. Fin. V. Cass Info Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008).)

Despite offering legal conclusions, Maxey's declarations fails to cite to any law, statutes or authority in support of his conclusions and simply makes conclusory statements of law. A few examples of said inappropriate legal conclusions are as follows:

- "An insurance company in California is required by law as well as the standard of care for insurance adjusting to consider all information and evidence in its possession (known as "proof of claim") when evaluating insurance claims."
- "It is especially troubling and lacking in good faith if an insurance company declines to review information in its possession…"
- "As a result of USAA CIC"s refusal to consider evidence arising from the 2012 collision underinsured motorist arbitration, … USAA CIC consciously disregarded information …"
- "Furthermore, if an insurance company chooses to rely on a medical expert to provide an

opinion regarding an insurance claim, the insurance company must choose a medical expert it knows to be qualified to conduct such a review."

- "These facts alone are a breach of the duty of good faith and fair dealing."

Local Rule 7-5 allows the Court to strike a declaration that fails to comply with the rule. USAA CIC therefore requests that this Court strike Maxey's declaration which consists of legal argument and legal conclusions.

## IV.
## THE ARMASES CANNOT POINT TO ANY CONTRACTUAL OBLIGATION THAT EXISTED OR WAS BREACHED IN THE HANDLING OF THEIR MED-PAY CLAIMS

In their Opposition, Plaintiffs have failed to point to any term or provision of the subject insurance contract which has allegedly been breached by USAA CIC. Indeed, most, if not all, of Plaintiffs' discussion of how USAA CIC allegedly breached the subject insurance contract is actually devoted to how USAA CIC allegedly breached the implied covenant of good faith and fair dealing – **not how USAA CIC breached the actual insurance contract**. In the absence of a breach of the insurance contract, Plaintiffs cannot sustain a claim for breach of the implied covenant. (*Minich v. Allstate Ins. Co.*, 193 Cal.App.4th 477, 493 (2011).)

As to the Med-Pay claim, Plaintiffs argue at length in their Statement of Facts and within their legal argument section that USAA CIC breached the insurance contract in its handling of the Med-Pay claims of both Plaintiffs because it unreasonably relied on the opinions of the AIS medical experts and that testimony from Dr. Eichbaum allegedly supported payment of all of Gina Armas' medical treatment. However, none of these claims demonstrates how there has been a breach of the insurance contract when the Policy allowed USAA CIC to rely on the opinions of third-party medical experts and when Dr. Eichbaum's opinions were not part of the handling of the first-party Med-Pay claim.

Plaintiffs' arguments do not demonstrate a breach of the subject insurance contract for four reasons: (1) the terms of the subject insurance contract allowed for Plaintiffs' medical records and invoices to be reviewed by an independent third party; (2) USAA CIC appropriately relied upon the medical experts to provide opinion regarding Plaintiffs' medical treatment; (3) the Med-Pay adjuster had the final decision over Med-Pay claims and (4) the Med-Pay and UIM claims were appropriately

kept separate, therefore, Dr. Eichbaum's opinions were limited to the UIM claim and the Med-Pay claim was handled based on the reports by the reviewing medical experts and other information relied on by the Med-Pay adjuster.

**A. <u>Plaintiffs' Failed To Provide Any Evidence Disputing That the Terms of the Policy Expressly Allowed For Plaintiffs' Medical Records and Invoices to be Reviewed By An Independent Third Party</u>**

It is undisputed that the subject policy expressly allows for a third party to review bills and records for reasonableness, necessity and relation to a loss**.** Specifically, the Policy's Med-Pay Coverage states two key terms: (1) that USAA CIC "will pay **<u>only the reasonable fee for medically necessary and appropriate medical services</u>**" and (2) that USAA CIC "or someone on [USAA CIC's] behalf will review, by audit or otherwise, claims for benefits under this coverage **<u>to determine if the charges are reasonable fees for medically necessary and appropriate services</u>** …". (The Policy at ARMAS_CP_034-035 [emphasis added].)

Therefore, by the express terms of the Policy, there is coverage for the payment of Plaintiffs medical treatment so long as Plaintiffs' medical treatment is medically necessary and appropriate and is determined medically necessary and appropriate by USAA CIC or someone on USAA CIC's behalf. Here, Auto Injury Solutions ("AIS") served as the independent third party reviewing Plaintiffs' medical treatment. Accordingly, the Policy permitted AIS to review Plaintiffs' medical treatment and invoices for medical necessity and appropriateness.

Plaintiffs have not disputed in their Opposition that the subject Policy expressly allows for payment of Med-Pay benefits so long as the medical treatment is determined medically necessary and appropriate or that their medical records and invoices may be reviewed by an independent third party.

**B. <u>The Med-Pay Adjusters Appropriately Relied Upon the Medical Experts to Provide Opinions Regarding the Necessity and Appropriateness of Plaintiffs' Medical Treatment</u>**

Here, USAA CIC's reliance on the reports by the AIS reviewing doctors in determining payment of Med-Pay benefits falls squarely within the scope of the Med-Pay coverage agreement. As permitted by the Policy, Med-Pay adjuster Mina Vidaurri appropriately relied upon Mark Albright, D.C. to provide opinions regarding David Armas' medical treatment in relation to the 2012 loss. Vidaurri also appropriately relied upon David, Chen, M.D. and George Sage, D.C. to provide

opinions regarding Gina Armas' medical treatment in relation to the 2012 loss.

Similarly, Med-Pay adjuster Carlos Mendez appropriately relied upon licensed physicians David Boguslavsky, M.D. and Timothy Chen, M.D. to provide opinions regarding the appropriateness of Gina Armas' medical treatment related to the 2014 loss. Both Vidaurri and Mendez's reliance on the AIS medical experts was not only permissible under the Policy but reasonable in determining the payment of Med-Pay benefits to Plaintiffs.

Moreover, in the adjusters' reliance upon the AIS medical experts, the adjusters were not required to independently investigate the credentials of the reviewing doctors as the assigned reviewing doctor was typically a doctor in the field of medicine that was being reviewed or in the same specialty as the area of injury being reviewed. (Deposition of Mina Vidaurri ["Vidaurri Depo."] at 65:22-66:9, **Exhibit 32** to Lolong Decl.)

Again, Plaintiffs' fail to dispute that the subject Policy expressly permitted the Med-Pay adjusters to rely on the opinion of the AIS medical experts.

**C. <u>The Med-Pay Adjusters Have Final Decision Over the Payment of Benefits</u>**

Furthermore, despite the determination by an AIS medical expert that medical treatment is or is not necessary or appropriate, the involvement of the reviewing medical expert is in a recommendation role as the Med-Pay adjuster has the final decision over the claim. As Vidaurri testified:

> "Mr. Frischer: Does USAA consider a document such as this, the PHADs, in deciding whether to accept or deny a claim?
>
> Ms. Vidaurri: Yes. We can use the physician review to make our decision, but again, we as an adjuster are going to use our experience and our knowledge of the claim as to whether or not this is something that we're going to stand on, but **<u>ultimately it's the adjuster's decision as to whether or not this is something that we'll use. It doesn't solely base our decision to not pay a claim</u>**."

(Vidaurri Depo. at 79:5-14.)

Therefore, the Med-Pay adjuster has the final decision over the payment of a claim and may choose to override the opinion of the reviewing doctor.

**D. The Med-Pay Claims and UIM Claims Were Appropriately Kept Separate**

Plaintiffs argue that Dr. Eldan Eichbaum testimony as to the reasonableness of Gina Armas' medical treatment, offered in the context of the UIM arbitration, should have been sufficient to constitute payment of any outstanding Med-Pay benefits in relation to both the 2012 and 2014 loss. (Opposition at 20:15-21:18.) However, as Vidaurri testified, Med-Pay claims and UIM claims are appropriately kept separate:

> "Mr. Frischer: So in deciding this wage loss claim here, Exhibit 45, USAA would not consider any information obtained in the course of its investigation in the UIM portion of the claim?
>
> Ms. Vidaurri: So we handle the med pay and the UM or UIM separately. That's why there's two adjusters, **<u>so anything that was needed to evaluate the med pay claim can be submitted under the med pay coverage</u>**."

(Vidaurri Depo. at 105:6-13.)

> "Mr. Frischer: And so USAA would then require an insured to resubmit this information that USAA obtained in the course of its investigation on the USAA – on the UIM claim?
>
> Ms. Vidaurri: Right. Again, because we're two – **<u>we're working as two *separate* adjusters under two *separate* coverages, so we're going to evaluate our claim based off of the information provided</u>**."

(Vidaurri Depo. at 106:2-9.)

Moreover, without authorization from Plaintiffs to share medical records and information between the UIM arbitration and the Med-Pay adjuster, the Med-Pay adjuster would not be permitted or able to review such information.

> Mr. Frischer: So are you saying that you would need the insured's permission to look in the claim file to obtain documents found in the UIM investigation?
>
> Ms. Vidaurri: Right. So we would want a medical authorization if it wasn't sent to us **<u>so that we stay compliant with requesting medical records</u>**. **<u>Even though it is within USAA, we would still want their permission</u>**.

(Vidaurri Depo. at 140:18-24.)

Therefore, although Dr. Eichbaum's deposition testimony was clearly considered as part of the UIM arbitration, there was no reason that his testimony or medical opinions or reports would have also been made available or shared with Vidaurri as the UIM and Med-Pay claims are handled by two separate adjusters for two entirely different and separate coverages – UIM and Med-Pay. Similarly, as the Med-Pay adjuster of the 2012 loss, neither would Dr. Eichbaum's opinions or testimony been made available to Mendez, the Med-Pay adjuster of the 2014 loss. Moreover, without the requisite authorization from Plaintiffs permitting the UIM claim handler to share medical records and information with the Med-Pay adjuster, such medical information would not have been made available to Vidaurri or Mendez to consider.

Accordingly, as discussed above, both Vidaurri and Mendez handled each of their respective Med-Pay claims based upon the AIS reviewing medical experts' reports and other information relied upon by Vidaurri and Mendez as the Med-Pay adjuster. To the extent that new or other information was provided on the UIM claim, it was Plaintiffs' responsibility to provide this information or an authorization for USAA CIC to share this information between the UIM and the Med-Pay adjuster.

## V.
## THERE CAN BE NO BREACH OF CONTRACT AS TO GINA ARMAS' WAGE LOSS CLAIM AS IT WAS NEVER BROUGHT WITHIN THE SCOPE OF COVERAGE

The Armases' assertion that Gina Armas' wage loss application connected her wage loss to the 2012 and 2014 losses based on the testimony provided by Dr. Satow is faulty for the same reasons discussed above regarding the separation of information between Plaintiffs' Med-Pay and UIM claims. Just as the information received as part of the UIM claim would not have been made available to the Med-Pay adjuster for consideration of the Med-Pay claim absent Plaintiffs' authorization, information received as part of the UIM claim would also not have been made available for consideration as part of Gina Armas' wage earner claim absent her authorization to release information between the two coverage adjusters.

Plaintiffs also claim that as to the 2012 loss, an adjuster provided them with incorrect information pertaining to the provisions of the wage earner claim. (Opposition at 12:13-15.) However, this was simply an honest mistake on the adjuster's part and not done knowingly and intentionally. In any event, other written communication to the Armases correctly advised them in writing that there

was a 2-year limitation on benefits. (Vidaurri Depo. at 118:20-119:5.) Finally, as discussed below, neither Gina Armas, nor her providers ever provided any documents or information linking her wage earner claim to the 2012 loss, therefore, any alleged "misrepresentation" never caused Gina Armas any actual injury or withholding of benefits. There was still information she had been advised she needed to present on her claim before USAA CIC could move forward with considering it.

Moreover, nowhere in Plaintiffs' Exhibit 45, a copy of Gina Armas' wage earner application, is there an established linkage between Gina Armas' disability and the 2012 or 2014 collision. (Exhibit 45 to the Declaration of Richard Frischer.) Indeed, there is documentation indicating Gina Armas is temporary disabled but none of the documents indicate that Gina Armas' disability is a result of the 2012 or 2014 accident. Therefore, there was still information that Gina Armas was required to present on her claim before USAA CIC could move forward with considering it. Ultimately, without any documents submitted in support of Gina Armas wage loss claim related to either the 2012 or 2014 loss, ***linking her disability to either the 2012 or 2014 loss***, this was not a covered claim under the Policy.

Accordingly, as the lack of supporting documentation prevented Gina Armas' wage earner claim from falling within the scope of coverage, there can be no breach of the insurance contract as a result and there certainly can be no bad faith.

## VI.
## THERE CAN BE NO BREACH OF CONTRACT AS TO GINA ARMAS' UIM CLAIM AS THE POLICY LIMITS WERE EXHAUSTED

The Armases have failed to adequately respond to USAA CIC's argument that there can be no breach of the subject insurance contract as to Gina Armas' UIM claim when USAA CIC paid Gina Armas the UIM coverage limits. (Opposition at 22:9-17.)

First, in response to USAA CIC argument that the subject insurance contract was not breached, Plaintiffs argue that a breach of the implied covenant may constitute a breach of the contract. This fails to address whether any term or provision ***of the actual contract*** was breached and fails to consider the well-established rule that there can be no claim for bad faith where benefits due under the policy have not been withheld. (*Love v. Fire Ins. Exchange*, 221 Cal.App.3d 1136, 1151 (1990).)

Second, the Armases mistakenly rely on *Wilson v. 21st Century Ins. Co.*, 42 Cal.4th 713 (2007), a case which by Plaintffs' own description involved an insurer that has ***unreasonable denied resolving a UIM matter***. In fact, the insurer in *Wilson* had initially rejected the UIM claim, unreasonably determining the insured was fully compensated by the at-fault driver's limits. (*Id.* at 719.) Here, USAA CIC did not deny Gina Armas' UIM claim. Moreover, *Wilson* did not address nor involve the issue of whether the express terms of an insurance contract were breached by payment of the policy limits and thus, does not assist Plaintiffs' claim that the subject insurance contract was breached here.

The Armases' failure to demonstrate in their Opposition how any provision of the actual insurance contract has been breached also ignores well-established case law that there simply can be no breach of the implied covenant without a breach of the insurance policy. (*Minich*, *supra*, at 493.)

Finally, in light of Plaintiffs' admission that David Armas' UIM claim is not at issue, neither can there be any breach of contract as to David Armas' UIM claim. (Opposition at 22:18-19.)

## VII.
## THERE CAN BE NO BAD FAITH WHEN THE ARMASES CANNOT DEMONSTRATE A BREACH OF THE INSURANCE CONTRACT

The Armases' Opposition fails to refute the arguments made in USAA CIC's moving papers – that there has been no breach of the subject insurance contract as to the Med-Pay, wage earner or UIM claims.

The absence of such a breach consequently leaves the Armases with no basis for their claim of breach of the implied covenant of good faith and fair dealing. (*See Love v. Fire Ins. Exchange*, *supra*, at 1151 and *Minich v. Allstate Ins. Co.*, *supra*, at 493.)

## VIII.
## THERE IS NO EVIDENCE OF FRAUD, OPPRESSION OR MALICE

### A. There is No Evidence of Fraud, Oppression, or Malice, Let Alone Clear and Convincing Evidence

The Armases have also ignored the well-established rule that in order to support a punitive damages claim on a motion for summary judgment, the higher evidentiary standard of "clear and convincing" evidence applies. (*Basich v. Allstate*, 87 Cal.App.4th 1112, 1122 (2001).) Indeed, aside from unsupported and conclusory statements that USAA CIC exhibited malice, oppression and fraud,

the Armases have no evidence, let alone, to the clear and convincing standard, that punitive damages are warranted here.

First, the Armases claim that simply because they sent a letter directed to USAA CIC's Senior Vice President and an Executive Director of Claims, outlining Plaintiffs' grievances and USAA CIC's alleged unreasonable conduct, such conduct was ratified by the Senior Vice President and an Executive Director of Claims. This unfounded and unsupported assumption in no way demonstrates or shows that any executive of USAA CIC "ratified" the conduct Plaintiffs complain of.

Second, the conduct Plaintffs complain of falls far below the threshold of conduct constituting malice or oppression. In support of their claim that USAA CIC exhibited malice or oppression, the Armases **only** evidence is that USAA CIC's alleged ignoring of evidence in its possession and failure to further investigate constitutes a conscious disregard. (Opposition at 25:14-16.) Such a conclusory statement lacks any evidentiary support and certainly does not exhibit conduct that was evil, criminal, recklessly indifferent to the rights of Plaintiffs, or done with a vexatious intention to injure Plaintiffs. (*Basich, supra*, at 1119.)

Third, neither does the adjuster's misstatement of the time period in which wage earner benefits are available constitute fraud as contemplated by the settled case law outlining the level of fraud needed to sustain a punitive damages award. Moreover, Plaintiffs assertion that USAA CIC removed pages from the documents Gina Armas submitted in support of her wage earner claim is simply unsupported. Plaintiffs' own evidence demonstrates Gina Armas' wage earner application failed to connect her disability and wage loss to either the 2012 or 2014 loss. (Exhibit 45 to Frischer Decl.) Accordingly, Plaintiffs' alleged evidence of fraud has no merit.

Here, as Plaintiffs have failed to submit clear and convincing evidence of malice fraud or oppression, the Court must summarily adjudicate the punitive damages claim in USAA CIC's favor, even if the Court may conclude a triable issue of fact on the bad faith claim. (*Basich, supra*, at 1118-1122.)

## IX.
## CONCLUSION

Accordingly, in light of the foregoing, USAA CIC respectfully requests that the Court grant

its Motion for Summary Judgment, or in the alternative, Motion for Partial Summary Judgment.

Dated: April 22, 2019 DKM LAW GROUP, LLP

By *Is/ Anastasia Lolong*

ROBERT S. McLAY
RSM@dkmlawgroup.com
JOSHUA N. KASTAN
JNK@dkmlawgroup.com
ANASTASIA M. LOLONG
AML@dkmlawgroup.com
535 Pacific Avenue, Suite 101
San Francisco, California 94133
Attorneys for Defendant
USAA CASUALTY INSURANCE COMPANY

**CASE NAME: ARMAS, et al. v. USAA CASUALTY INSURANCE COMPANY, et al.**

**ACTION NO.: USDC, Northern District of CA, San Jose Division Case No. 5:17-cv-06909-EJD**

## PROOF OF SERVICE

I am a resident of the State of California. My business address is 535 Pacific Avenue, Suite 101, San Francisco, CA 94133. I am employed in the County of San Francisco where this service occurs. I am over the age of 18 years, and not a party to the within cause. I am readily familiar with my employer's normal business practice for collection and processing of correspondence for mailing with the U.S. Postal Service, and that practice is that correspondence is deposited with the U.S. Postal Service the same day as the day of collection in the ordinary course of business.

On the date set forth below, following ordinary business practice, I served a true copy of the foregoing document(s) described as:

**DEFENDANT USAA CASUALTY INSURANCE COMPANY'S <u>REPLY</u> MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

**DEFENDANT USAA CASUALTY INSURANCE COMPANY'S <u>REPLY</u> SEPARATE STATEMENT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

**DECLARATION OF ANASTASIA M. LOLONG IN SUPPORT OF DEFENDANT USAA CASUALTY INSURANCE COMPANY'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

---

☒ (BY CM/ECF) I caused such document(s) to be e-filed and e-served through the CM/ECF portal for the Northern District of California.

Bryan D. Lamb, Esq.
Richard L. Frischer, Esq.
Lamb & Frischer Law Firm, LLP
1388 Sutter Street, Suite 815
San Francisco, CA 94109
Phone: (415) 997-9529
Fax: (415) 276-2885
richard@lambandfrischer.com

***Attorneys for Plaintiffs***

Kenneth J. Kroopf, Esq.
THE LAW OFFICES OF KENNETH J. KROOPF,
A PROFESSIONAL LAW CORPORATION
500 Lighthouse Avenue, Suite A

Monterey, CA 93940 ken@kroopflaw.com

☒ *(State)* I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on April 22, 2019 at San Francisco, California.

*/s/ Mona Mujaddidi*

Mona Mujaddidi