UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GINA ARMAS, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>USAA CASUALTY INSURANCE COMPANY,<br><br>    Defendant. | Case No. 5:17-cv-06909-EJD<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 37 |

This dispute arises from two car accidents involving Plaintiffs Gina and David Armas. Defendant USAA Casualty Insurance Company provided Plaintiffs with automobile insurance coverage. In connection with the accidents, Plaintiffs submitted insurance claims under their Under Insured Motorist ("UIM") coverage, Medical Payments coverage, and Extended Benefits coverage. After Defendant allegedly failed to pay Plaintiffs the benefits due under their policy—or delayed paying benefits due, Plaintiffs sued for breach of contract and breach of the implied covenant of good faith and fair dealing, and seek punitive damages. Defendant moved for summary judgment. Having considered the parties' papers and having heard oral arguments, the Court denies the motion.

**I. Factual Background**

Plaintiffs' car insurance policy went into effect in November 2012. Dkt. No. 37-3 (Lolong Ex. 19) at 22-65 (the "Policy"). On December 27, 2012, Plaintiffs were rear ended while stopped at a red light in Merced, California (the "2012 Accident"). Following the 2012 Accident, both Plaintiffs complained of neck and back pain. Over the course of the next year, Gina Armas submitted medical bills for $18,918.71 to Defendant under their Medical Payments coverage.

Defendant paid $2,630.73 of those bills. David Armas submitted $11,033.35 in medical bills, of which Defendant paid $3,428.00. In April of 2014, Gina Armas underwent shoulder surgery that was performed by Dr. Gregg Satow. Following the shoulder surgery, Gina Armas, on the advice of Dr. Satow, took time off of her job to recover. On July 26, 2014, Plaintiffs were again rear ended while stopped at a red light (the "2014 Accident").

In January 2015, Plaintiffs settled the 2012 Accident with the underlying tortfeasor, whose insurance policy carried a limit of $30,000 per accident. Gina Armas received $15,000, David Armas received $10,000, and a third party received the remaining $5,000. Plaintiffs advised Defendant of the settlement and, pursuant to the Policy, issued a demand for arbitration concerning their UIM coverage. Defendant deposed Dr. Satow during the runup to the arbitration. Defendant retained Dr. Eldan Eichbaum as a medical expert. He reviewed Gina Armas's records and issued an initial report on February 16, 2016. In that report, he concluded that her pain arose from conditions that were present before the 2012 Accident. He further opined that surgery was not indicated at that time and would not be indicated due to the 2012 Accident. He issued supplemental reports based on her records on April 28, 2016, November 5, 2016, and December 27, 2016. He conducted an independent medical examination of Gina Armas on March 20, 2017, and then issued a report. In all of these reports, he concluded that his original opinions did not change. But, during his deposition on April 28, 2017, he testified that Gina's Armas's treatments were reasonable and medically necessary. The parties agree that this was a change in his opinion. Based on this apparent change, Defendant paid Gina Armas the maximum under her UIM coverage: $285,000, *i.e.*, the maximum of $300,000 less the $15,000 paid by the underlying tortfeasor. Defendant and David Armas reached a settlement as to his UIM coverage.

While Plaintiffs and Defendant prepared to arbitrate the UIM coverage, Plaintiffs submitted to Defendant medical bills allegedly related to the 2014 Accident: Gina Armas for $10,370.00 and David Armas for $8,444.00. Defendant paid $3,463.75 under Gina Armas's Medical Payments coverage and $4,916.83 under David Armas's Medical Payments coverage. In April of 2015, Gina Armas underwent a second shoulder surgery. As with the previous surgery, Dr. Satow recommended she take time off from her job. A year later, she underwent neck surgery,

Case No.: 5:17-cv-06909-EJD
ORDER DENYING MOTION FOR SUMMARY JUDGMENT
2

which was performed by Dr. Serena Hu. Following that surgery, she took time off from her job.

In 2016, Defendant provided Plaintiffs with forms to submit claims under their Extended Benefits coverage for wages lost during Gina Armas's time taken off work. Plaintiffs submitted one claim related to the 2012 Accident (the "031 Application") covering her post-surgery work restriction beginning in April 2014, and two claims related to the 2014 Accident (the "035 Application") covering two post-surgery work restrictions starting in April 2015 and April 2016. With these Applications, Plaintiffs submitted notes from Dr. Satow. After receiving the Extended Benefit forms, the claims adjuster working on the 031 Application left Plaintiffs a voicemail in which she erroneously stated that the Policy only covered wages lost within one year of the subject accident, when it actually covered wages lost within two years of the accident. Under the adjuster's misrepresentation, the 031 Application would not be covered. Defendant did not respond to the 035 Application. On June 14, 2017, Plaintiffs' counsel contacted Defendant to follow up on the claims. Defendant responded to counsel with an email that stated no Extended Benefits forms had been submitted in connection with the 2014 accident. Later, on August 23, 2017, Defendant sent Plaintiffs' counsel another letter stating that the 035 Application did not contain information connecting the lost wages to an automobile accident. That same correspondence represented that Defendant had not received the 031 Application. Defendant does not consider the August 23, 2017 letter to be a denial of claims.

## II. Legal Standard

A court shall grant summary judgment motion where the moving party shows that no genuine dispute as to any material fact exists and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Where the moving party will not bear the ultimate burden of persuasion at trial, it has both the initial burden of production and the ultimate burden of persuasion on the motion. *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1188 (9th Cir. 2016). The moving party may discharge its initial burden of production by "either produc[ing] evidence negating an essential element of the nonmoving party's claim . . . or show[ing] that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1103 (9th Cir. 2000). If the

Case No.: 5:17-cv-06909-EJD
ORDER DENYING MOTION FOR SUMMARY JUDGMENT
3

moving party carries that burden, then "the nonmoving party must produce evidence to support its claim or defense." *Friedman*, 833 F.3d at 1188 (quotation and citation omitted). But, if the moving party cannot carry the initial burden, then the nonmoving party need not produce any evidence to defeat the motion. *Nissan Fire & Marine*, 210 F.3d at 1102-03. For the moving party to carry its ultimate burden of persuasion, it must convince the deciding court that "there is no genuine issue of material fact." *Friedman*, 833 F.3d at 1188.

"A dispute is genuine only if there is sufficient evidence for a reasonable trier of fact to resolve the issue in the nonmovant's favor, and a fact is material only if it might affect the outcome of the case." *LivePerson, Inc. v. [24]7.ai, Inc.*, 2018 WL 5849025, at *3 (N.D. Cal. Nov. 7, 2018) (citing *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014)). A court must draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.* (citing *Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1018 (9th Cir. 2010)).

### III. Breach of Contract

Plaintiffs claim that Defendant breached the Policy as to Gina Armas's UIM coverage, both Plaintiffs' Medical Payments coverage, and Gina Armas's Extended Benefits coverage. "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." *Baldwin v. AAA N. Cal., Nev. & Utah Ins. Exch.*, 1 Cal. App. 5th 545, 549-50 (2016), *as modified* (July 13, 2016). "The elements of a breach of contract action under California law are: (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damages to plaintiff as a result of the breach." *Moss v. Infinity Ins. Co.*, 2015 WL 7351395, at *3 (N.D. Cal. Nov. 20, 2015). "Unreasonable delay in paying policy benefits or paying less than the amount due is actionable withholding of benefits which may constitute a breach of contract . . . ." *Intergulf Dev. LLC v. Superior Court*, 183 Cal. App. 4th 16, 20 (2010) (citing *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 723 (2007)). "What is a reasonable time is a question of fact." *Palmquist v. Palmquist*, 212 Cal. App. 2d 322, 331 (1963); *see also Mattson v. United Servs. Auto. Ass'n*, 2019 WL 2330087, at *8 (S.D. Cal. May 31, 2019).

Case No.: 5:17-cv-06909-EJD
ORDER DENYING MOTION FOR SUMMARY JUDGMENT
4

**a. UIM Coverage**

Defendant contends that it did not breach the Policy in connection with Gina Armas's UIM coverage because it paid her the maximum benefit. Dkt. 52-2 at 18, 19 (Pls.' Facts 21, 23). It argues that it relied on Dr. Eichbaum's reports in withholding UIM payments to Gina Armas until he changed his opinion during his deposition, at which point it promptly paid her. However, Gina Armas and Defendant agreed to arbitrate her UIM coverage on January 28, 2015, and Defendant did not settle until May of 2017. Plaintiffs argue that this delay is not justifiable. Opp'n at 7-8, 22, 24

Plaintiffs have presented sufficient evidence to raise a genuine issue of material fact as to whether Defendant's delay in paying her UIM benefits was reasonable. In November 2016, Defendant's litigation manager wrote a report finding that Gina Armas's neck pain had worsened. Dkt. No. 52-2 at 31-32 (Pls.' Fact 14). This finding contradicted the conclusions (but not necessarily the substance as discussed below) of Dr. Eichbaum's reports. When Dr. Eichbaum changed his opinion during the deposition, he testified that her neck pain had not subsided. Eichbaum Dep. at 16:1-21, 22:19-24:13; *see* Dkt. 52-2 at 31, 33 (Pls.' Facts 10, 22). Plaintiffs' have therefore raised a triable question as to whether it was reasonable for Defendants to continue to withhold payment for months after finding that her neck pain had worsened.

**b. Medical Payments Coverage**

Plaintiffs claim that Defendant breached the Policy by refusing to pay for, or agreeing to pay only a portion of the cost of medical payments allegedly resulting from the two accidents. For the 2012 Accident, Gina Armas submitted $18,918.71 in charges, of which Defendant paid only $2,630.73, and David Armas submitted $11,033.35 in charges, of which Defendant paid only $3,428.00 Dkt. 52-2 at 29 (Pls.' Fact 3). For the 2014 Accident, Gina Armas submitted $10,370.00 in charges, of which Defendant paid $3,463.75, and David Armas submitted $8,444.00, of which Defendant paid $4,916.83. *Id.* at 34 (Pls.' Fact 28).

The Policy provides:
> A. Medical Payments Coverage.
> 1. We will pay only the reasonable fee for medically necessary and

Case No.: 5:17-cv-06909-EJD
ORDER DENYING MOTION FOR SUMMARY JUDGMENT
5

appropriate medical services and the reasonable expense for funeral services. These fees and expenses must:

>  a. Result from BI [bodily injury] sustained by a covered person in an auto accident; and
>
>  b. Be incurred for services rendered within one year of the date of the auto accident.

2. We or someone on our behalf will review, by audit or otherwise, claims for benefits under this coverage to determine if the charges are reasonable fees for medically necessary and appropriate services or reasonable expenses for funeral services.

Dkt. No. 37-3 at 56-57 (Policy at 34-35). The Policy obligated Defendant to reimburse Plaintiffs only for services that are "medically necessary and appropriate medical services," and that reimbursement would be equal to the "reasonable fee" for such service. Defendant could rely on third parties to determine whether a service qualifies as a "medically necessary and appropriate medical service" and what amount to pay as a "reasonable fee." The Policy defines both terms. "Medically necessary and appropriate medical services" are defined as:

> [T]hose services or supplies provided or prescribed by a licensed hospital, licensed physician, or other licensed medical provider that, as determined by us or someone on our behalf, are required to identify or treat [bodily injury] caused by an auto accident and sustained by a covered person and that are:
>
> 1. Consistent with the symptoms, diagnosis, and treatment of the covered person's injury and appropriately documented in the covered person's medical records;
>
> 2. Provided in accordance with recognized standards of care for the covered person's injury at the time the charge is incurred;
>
> 3. Consistent with published practice guideline and technology, and assessment standards of national organizations or multi-disciplinary medical groups;
>
> 4. Not primarily for the convenience of the covered person, his or her physician, hospital, or other health care provider;
>
> 5. The most appropriate supply or level of service that can be safely provided to the covered person; and
>
> 6. Not excessive in terms of scope, duration, or intensity of care needed to provide safe, adequate, and appropriate diagnosis and treatment.

Dkt. No. 37-3 at 40 (Policy at 18). The Policy defines a "reasonable fee" as:

> [T]he amount which we will pay for charges made by a licensed

> hospital, licensed physician, or other licensed medical provider for medically necessary and appropriate medical services. We will pay the lesser of:
>
> 1. The actual charge;
>
> 2. The charge negotiated with a provider; or
>
> 3. The charge determined by a statistically valid database that is designed to reflect charges for the same or comparable services or supplies in the same or similar geographic region. The database will also reflect, where applicable, (a) the value of the actual medical services based on a nonspecialty specific relative value scale for the services relative to other services and, (b) in the case of new procedures, services, or supplies, a comparison to commonly-used procedures, services, or supplies.

*Id*. So, while the Policy permits Defendant to delegate determinations of whether a medical service should be reimbursed and, if so, the amount of reimbursement to third parties, those determinations must be made in alignment with the Policy's specific criteria.

Defendant fails to carry its initial burden for the motion. Assuming that Defendant presents sufficient evidence to show that it—or its third-party reviewer Auto Injury Solutions ("AIS")—properly determined whether Plaintiffs' claimed services were covered as "medically necessary and appropriate medical services," Defendant does not show that it or AIS properly determined that the amounts paid for covered services qualified as "reasonable fees." When Defendant or AIS determines that a claimed service is a "medically necessary and appropriate medical service," then Defendant is bound to "pay the lesser of" the actual charge, the charge negotiated with a provider, or the "charge determined by a statistically valid database that is designed to reflect charges for the same or comparable services or supplies in the same or similar geographic region." Defendant makes no attempt to show show that its payments to Plaintiffs were determined pursuant to those criteria.

On several occasions when Defendant relied on AIS to process Plaintiffs' claims for Medical Payments coverage, AIS accepted the claimed service, but then paid Plaintiffs less than the amount charged. Dkt. 52-2 at 30 (Pls.' Fact 7). In one instance, for example, Plaintiffs submitted a bill for $1056.33, but Defendant only reimbursed for $741.03. Dkt. 50-6 at 35 (Frischer Ex. 47 at 448). But there is no evidence that these reductions were made pursuant to the

Case No.: 5:17-cv-06909-EJD
ORDER DENYING MOTION FOR SUMMARY JUDGMENT
7

Policy. Indeed, Defendant's designated corporate witness testified that she did not know how AIS determined to reduce payment amounts and has never seen an explanation for how AIS makes that determination. Dkt. 52-2 at 30 (Pls.' Facts 7, 8). The adjuster who worked on Plaintiffs' Medical Payments claims arising from the 2014 Accident also testified that he did not know why AIS reduced certain reimbursements. *Id.* at 34 (Pls.' Fact 29). Despite Plaintiffs repeatedly raising this argument (Dkt. 50 at 3-4, 13-14, 21), Defendant's reply cites no evidence showing it complied with the reasonable fee provision of the Policy. Instead, Defendant argues that the Policy permitted it to rely on third parties to process Medical Payment claims and that its adjusters—not AIS—made the final decision on submitted claims. Reply at 11. This argument may be true, but it is not relevant to this point and does not save the motion.

### c. Extended Benefits Coverage

Plaintiffs contend that Defendant breached the Policy by failing to respond to the two Extended Benefits Applications that Gina Armas submitted in August or September 2016 to cover three periods of lost wages following her surgeries. Dkt. 52-2 at 35 (Pls.' Fact 32); Frischer Exs. 45, 82, 83. Under the Policy, Defendant agreed that it "will pay the following benefits for BI [bodily injury] caused by an auto accident and sustained by a covered person: Wage Earner Disability Benefit of 85% of income actually lost by an employed covered person during a period of total disability." Policy at 019. Gina Armas filed the 031 Application for wages lost for time she took off from work to recover from surgery resulting from the 2012 Accident. Dkt. 52-2 at 35 (Pls.' Fact 32); Frischer Ex. 45. The 035 Application covers two periods of time off needed to recover from two surgeries related to the 2014 Accident. Dkt. 52-2 at 35 (Pls.' Fact 32); Frischer Exs. 82, 83.

Defendant argues that summary judgment on the claim for breach of contract regarding the Wage Loss coverage is appropriate because neither the 031 Application nor the 035 Application connects the lost wages to covered automobile accidents. Defendant does not dispute that the Applications attached Dr. Satow's recommendations that Gina Armas take time off work, but they contend that Dr. Satow's recommendations did not link her recovery to 2012 or 2014 Accidents. Dkt. 52-2 at 22 (Def.'s Fact 31). Defendant argues that she was required to present information

Case No.: 5:17-cv-06909-EJD
ORDER DENYING MOTION FOR SUMMARY JUDGMENT
8

about such a link in order for it to "move forward with considering" the applications. Reply at 14. In other words, "this was not a covered claim under the Policy." *Id.*

Defendant's argument inappropriately narrows the universe of proof that Defendant was required to consider. Plaintiffs point out that about two months before Gina Armas submitted the applications, Dr. Satow testified—in connection with the UIM claim—that the work restrictions he recommended for Gina Armas arose from the 2012 and 2014 Accidents. Dkt. 52-2 at 31 (Pls.' Facts 11-13). Defendant counters that it kept all of Plaintiffs claims separate and that it could not share medical information about Plaintiffs among the adjusters working on their different claims. Reply at 12-14. Defendant, though, cites no authority supporting this position. And, as Plaintiffs argue, California insurance regulations are to the contrary: "No insurer shall require a first party claimant or beneficiary to submit duplicative proofs of claim where coverage may exist under more than one policy issued by that insurer." Cal. Code Regs. tit. 10, § 2695.4(g). Violations or noncompliance with California's insurance regulations constitutes evidence of breach of conduct or bad faith by the insured. *Rattan v. United Servs. Auto. Ass'n*, 84 Cal. App. 4th 715, 724 (2000). Defendant does not address this regulation in its reply. The Court finds that Plaintiffs have raised a genuine issue of material fact as to whether Defendant breached the Policy regarding the Extended Benefits coverage.

## IV. Breach of the Implied Covenant of Good Faith and Fair Dealing

"There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement. This principle is applicable to policies of insurance." *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1158 (9th Cir. 2002) (citation and quotation omitted). "The responsibility of the insurer to act in good faith is not the requirement mandated by the terms of the policy itself but is imposed by law." *Id.* (citation and quotation omitted). "The implied covenant of good faith and fair dealing obligates the insurer to not unreasonably withhold benefits or refuse what is due under the contract without proper cause." *Waters v. United Servs. Auto. Assn.*, 41 Cal. App. 4th 1063, 1070 (1996). In other words, the "implied covenant imposes upon each party the obligation to do everything that the contract presupposes they will do to accomplish its purpose." *Chateau*

Case No.: 5:17-cv-06909-EJD
ORDER DENYING MOTION FOR SUMMARY JUDGMENT
9

*Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 345 (2001), *as modified on denial of reh'g* (July 30, 2001). When considering causes of action under the implied covenant, "the critical issue [is] the reasonableness of the insurer's conduct under the facts of the particular case." *Wilson*, 42 Cal. 4th at 723. "[T]he reasonableness of an insurer's claims-handling conduct is ordinarily a question of fact." *Amadeo*, 290 F.3d at 1158.

Where benefits are due to an insured, "an insurer's obligations extend beyond simply paying the benefits to which its insured is entitled: when benefits are due an insured, delayed payment based on inadequate or tardy investigations, oppressive conduct by claims adjusters seeking to reduce the amounts legitimately payable and numerous other tactics may breach the implied covenant because they frustrate the insured's right to receive the benefits of the contract in prompt compensation for losses." *Brehm v. 21st Century Ins. Co.*, 166 Cal. App. 4th 1225, 1236 (2008), *as modified* (Oct. 6, 2008). The insurer's investigation of an insured's claims must be thorough, including "diligently search[ing] for evidence which supports its insured's claim." *Mariscal v. Old Republic Life Ins. Co.*, 42 Cal. App. 4th 1617, 1620, 1623 (1996), *as modified* (Mar. 28, 1996), *as modified* (Mar. 29, 1996); *see also Amadeo*, 290 F.3d at 1163. As part of this investigation, "[a]n insurance company may not ignore evidence which supports coverage. If it does so, it acts unreasonably towards its insured and breaches the covenant of good faith and fair dealing." *Mariscal*, 42 Cal. App. 4th at 1624. Defendant's primary argument is that when an insurer has not breached a policy, then the insurer could not have breached the implied covenant. Mot. at 19; Reply. at 15. Because the Court has found that triable questions exist as to the breach of contract claims, this argument is inapplicable and the Court does not consider it.

   a. **UIM Coverage**

Plaintiffs present sufficient evidence to raise a genuine dispute of material fact that Defendant acted unreasonably as to Gina Armas's UIM coverage. In particular, Plaintiffs come forward with evidence showing that the substance of Dr. Eichbaum's reports are inconsistent with their expressed conclusion that the accidents did not cause her to undergo surgery. In his second supplemental report, dated November 5, 2016, Dr. Eichbaum stated that Gina Armas's cervical disc replacement was "not unreasonable" even if he did not believe she was "an ideal candidate for

Case No.: 5:17-cv-06909-EJD
ORDER DENYING MOTION FOR SUMMARY JUDGMENT
10

surgery." Pierce Ex. 10 at 1103. He further stated that that she had "sustained a cervical strain/sprain from the" 2012 Accident. *Id.* Despite this, he then opines that the 2012 Accident was not the cause of her surgery. *Id.* at 1104. Additionally, in his March 20, 2017 report of his independent medical examination of Gina Armas, he stated that the 2012 Accident caused her to experience "transiently symptomatic" neck pain. Pierce Ex. 12 at 1079. But this conclusion is at odds with his finding that she experienced "persistent neck pain" following the accident, and her statement to him that prior to the neck surgery her neck pain was "constant." *Id.* at 1076.

Moreover, Plaintiffs challenge the logic underlying his stated reasons for changing his opinion on whether her surgeries were necessary. He explained his change in opinion, "After reviewing her situation for the years that she's had her symptoms, I don't think it's unreasonable to attempt surgery, as she has undergone nonoperative modalities. I would agree, in the first two or three years I would not have offered her surgery, as a surgeon . . . . But if someone has undergone treatment for four years, as she had, and had not improved, and she really only has a single-level mild abnormality, it's not unreasonable to proceed with surgery in that situation." Eichbaum Depo. at 22:13-23:16. But this explanation does not explain why his opinion changed between his examination of Gina Armas on March 20, 2017 and his deposition on April 28, 2017. Lolong Ex. 16 at 12:25-14:21. In the intervening 39 days, he did not review any pre-surgery records that may have provided him new information about her condition before the surgery. His offered rationale—that her pain had not improved over four years—was just as true during the April 2017 deposition as it was when he issued his second supplemental in November 2016.

Defendant's reliance on Dr. Eichbaum's reports and testimony raises a triable question of material fact on whether Defendant complied with the implied covenant. Relying on opinions and analyses that "lack[] any discernable medical foundation" is not reasonable. *See Wilson*, 42 Cal. 4th at 722. "To protect its insured's contractual interest in security and peace of mind, it is essential that an insurer fully inquire into possible bases that might support the insured's claim." *Id.* at 721 (quotation and citation omitted). Plaintiffs question the internal coherence of Dr. Eichbaum's reports. Because Defendant uncritically relied upon those reports to withhold benefits from Gina Armas, there exists a triable issue of whether Defendant's conduct breached the implied

Case No.: 5:17-cv-06909-EJD
ORDER DENYING MOTION FOR SUMMARY JUDGMENT
11

covenant.

This triable issue also defeat's Defendant's argument that the genuine dispute doctrine precludes this bad faith cause of action. "[A]n insurer is entitled to summary judgment based on a genuine dispute over coverage or the value of the insured's claim only where the summary judgment record demonstrates the absence of triable issues as to whether the disputed position upon which the insurer denied the claim was reached reasonably and in good faith." *Wilson*, 42 Cal. 4th at 724. Here, Plaintiffs have raised a triable question as to the reasonableness of Defendant's conduct, so the genuine dispute doctrine does not apply.

### b. Medical Payments Coverage and Extended Benefits Coverage

Plaintiffs have also presented sufficient evidence to raise genuine disputes of material fact as to whether Defendant acted reasonably with regard to its investigations for the Medical Payments and Extended Benefits coverage. "An insurance company may not ignore evidence which supports coverage. If it does so, it acts unreasonably towards its insured and breaches the covenant of good faith and fair dealing." *Mariscal*, 42 Cal. App. 4th at 1624. As to the Medical Payments coverage, Dr. Eichbaum was asked in deposition whether he considered any of the treatments that Gina Armas received were unnecessary; he responded "no." Eichbaum Depo. at 14:16-21. Regarding the Extended Benefits coverage, Dr. Satow testified that the work restrictions he recommended for Gina Armas were related to the 2012 and 2014 Accidents. Satow Depo. at 53:5-9, 55:21-55:19. Both of these depositions took place in the context of the UIM arbitration. Defendant takes the position that it was not obligated to consider them in connection with the Medical Payments and Extended Benefits claims, but as discussed above, Defendant has no legal authority supporting this position and it is at odds with title 10 section 2695.4 of the California Code of Regulations. Such noncompliance with the insurance regulations is evidence of bad faith. *Rattan*, 84 Cal. App. 4th at 724. The Court finds that Defendant cannot carry its initial burden of production to defeat the bad faith claim concerning the Medical Payments and Extended Benefits coverage.

### V. Punitive Damages

"[B]ad faith by an insurer is subject to tort remedies, including punitive damages."

*Amadeo*, 290 F.3d at 1161. "Punitive damages are available if in addition to proving a breach of the implied covenant of good faith and fair dealing . . . the insured proves by clear and convincing evidence that the insurance company itself engaged in conduct that is oppressive, fraudulent, or malicious." *Id.* at 1164 (quotation and citation omitted). Fraud is "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." Cal. Civ. Code § 3294(c)(3). "While the clear and convincing evidentiary standard is a stringent one, it does not impose on a plaintiff the obligation to prove a case for punitive damages at summary judgment." *Johnson & Johnson v. Superior Court*, 192 Cal. App. 4th 757, 762 (2011) (citation and quotation omitted). "[T]he higher standard of proof must be taken into account in ruling on a motion for summary judgment or summary adjudication, since if a plaintiff is to prevail on a claim for punitive damages, it will be necessary that the evidence presented meet the higher evidentiary standard." *Id.* (citation and quotation omitted). "Determinations related to assessment of punitive damages have traditionally been left to the discretion of the jury." *Amadeo*, 290 F.3d at 1165 (quotation and citation omitted).

Here, Plaintiffs have presented evidence that one of Defendant's adjusters left a voicemail for Plaintiffs stating that the 031 Application concerned wages lost outside of the period covered by the Policy and that the adjuster's voicemail statement was not an accurate representation of the policy. Dkt. 52-2 at 33-34 (Pls.' Fact 25); *see* Reply at 13. Plaintiffs have further presented evidence that the adjuster then took no more actions relating to the 031 Application. *Id.* at 34 (Pls.' Fact 26). Defendant argues that the adjuster's statement was "an honest mistake," but they have presented no evidence to support that assertion. Reply at 13-14. Defendant also represented to Plaintiffs' counsel in June of 2017 that Plaintiffs had not submitted any wage loss forms in connection with the 2012 Accident—in other words that they had not submitted the 031 Application. Dkt. 52-2 at 36 (Pls.' Fact 39). Defendant now concedes that Plaintiffs submitted the application. *Id.* at 35 (Pls.' Fact 32). Plaintiffs do not address the June letter in their Reply. Looking at these facts in the light most favorable to Plaintiffs, the Court finds that they have raised a genuine dispute as to whether Defendant engaged in fraudulent conduct. The Court further finds

Case No.: 5:17-cv-06909-EJD
ORDER DENYING MOTION FOR SUMMARY JUDGMENT
13

that—again, viewed most favorably for Plaintiffs—a reasonable jury could conclude that Plaintiffs will be able to meet the clear and convincing standard for punitive damages. The motion is denied as to Plaintiffs' prayer for punitive damages.

## VI. Objections

Both parties raise several objections. The Court either declines to rule on them or overrules them as follows. Plaintiffs object to portions of two of Defendant's witness declarations, (Opp'n at 18-20) and to the Lolong Exhibit 32 (Dkt. No. 53). Defendant objects to Plaintiffs' expert witness declaration. Reply at 7-9. However, the Court does not find any of the challenged evidence to be material, and the challenged evidence does not factor into the Court's reasoning. Therefore the Court declines to rule on the objections. Finally, Defendant objects to Plaintiffs' Responsive Separate Statement on the grounds that it violates the Court's Standing Order. However, Defendant's Reply Separate Statement also violates the Court's Standing Order by failing to state whether it disputes each of Plaintiffs' facts. *See* 2015 Civil Standing Order § IV.B.2(b). Without condoning the parties' mutual disregard for the Court's Standing Order, all objections to the form of the parties' separate statements are overruled.

## VII. Conclusion

For the reasons discussed above, the motion is denied.

**IT IS SO ORDERED.**

Dated: July 24, 2019

EDWARD J. DAVILA
United States District Judge

Case No.: 5:17-cv-06909-EJD
ORDER DENYING MOTION FOR SUMMARY JUDGMENT
14